IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| LORI L. PAAKAULA, ) | CIVIL NO. 04-00071 SPK-LEK |
| ) | |
| Plaintiff, ) | MEMORANDUM IN SUPPORT OF |
| ) | DEFENDANT'S MOTION TO DISMISS |
| vs. ) | COMPLAINT AND/OR FOR SUMMARY |
| ) | JUDGMENT |
| JOHN E. POTTER, in his ) | |
| official capacity as the ) | |
| Postmaster General of the ) | |
| United States Postal Service, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| _____ ) | |

MEMORANDUM IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS COMPLAINT AND/OR FOR SUMMARY JUDGMENT

On January 30, 2004, Plaintiff Lori Paakaula filed the instant Complaint seeking declaratory and injunctive relief, back-pay, front-pay and compensatory damages from the United States Postal Service ("USPS") for alleged employment discrimination based on a claimed work-related mental disability of post-traumatic stress disorder ("PTSD") and/or alleged retaliation.  See Complaint at ¶s  1, 16, 25 and 26.

This action -- which on its face purports to be an employment discrimination case filed against the USPS under the Rehabilitation Act -- is, in reality, an improper attempt by Plaintiff to avoid the exclusive remedies provided by the Federal Employees Compensation Act ("FECA"), and to improperly seek damages in addition to the FECA workers compensation benefits

already awarded to Plaintiff by the Secretary of the United States Department of Labor ("USDOL"), through the Office of Workers Compensation Program ("OWCP"), for the same work-related mental condition (PTSD and panic disorder). Because FECA provides the exclusive remedy for the disability or death of a federal employee resulting from personal injury sustained on the job, this Court must dismiss this action or enter summary judgment in favor of Defendant as a matter of law.

I.   STATEMENT OF FACTS

In her Complaint, Plaintiff asserted that the USPS discriminated against her on the basis of an existing job-related mental disability (PTSD) and/or improperly retaliated against her when it notified her in June 2002, that she would be reassigned to work on a shift where it was possible that she could be exposed to two USPS employees who triggered her PTSD. See Complaint at ¶ 16. As set out more fully below, there is no dispute that Plaintiff submitted a claim for FECA benefits based on the same job-related disability (PTSD) that underlies this disability discrimination case -- i.e., her claim that the USPS' proposed job reassignment could expose her to the particular USPS employees who could trigger a recurrence of her PTSD -- and that OWCP accepted that claim and awarded her full FECA benefits.

Although Plaintiff attempts to complicate and confuse the of this case by referring to on-the-job incidents that

occurred in 1993 and 1999; two prior FECA claims that she filed in connection with those 1993 and 1999 incidents, both of which have been finally resolved; and an earlier EEO complaint based on the 1999 incident, none of the previous incidents or proceedings are legally relevant to this case or this motion. To provide historical context, however, the United States will briefly summarize Plaintiff's two earlier FECA claims.

    A.   <u>The 1993 Incident/FECA Claim #1</u>.

    Plaintiff has been employed by the USPS since October 31, 1983, as a postal clerk. <u>See</u> Complaint at ¶s 4 and 7. On July 17, 1993, Plaintiff witnessed a workplace fight between co-worker, Rodney Lau, and another USPS employee, which also involved Rodney Lau's wife, Anna Lau. <u>See</u> Complaint at ¶ 8. As a result of this incident, Plaintiff apparently suffered severe anxiety attacks and was unable to work. <u>See</u> Complaint at ¶s 9 and 10. As a result of this alleged on-the-job injury, Plaintiff filed a claim for FECA benefits with the OWCP, which was designated as OWCP Claim No. 131021396 (hereinafter referred to as FECA Claim #1), and sought medical treatment. <u>See</u> Complaint at ¶s 10 and 11. Plaintiff's mental condition was diagnosed as PTSD that was triggered by Plaintiff's contact with the Laus. As a result, her doctors recommended that she be allowed to work at a time and location where she would have no contact with the Laus. <u>See</u> Complaint at ¶ 12. The OWCP eventually accepted her

mental disability claim and she was awarded benefits under FECA Claim #1.  See the attached Declaration of Alan Y. Ueno (the "Ueno Declaration") at ¶s 4-6.

    B.    The 1999 Incident/FECA Claim #2.

Plaintiff apparently was able to perform her job as a clerk from 1993 until 1999.  See Complaint at ¶s 14 and 15.  In September 1999, Plaintiff claimed that her PTSD was exacerbated when she was allegedly harassed by her then-immediate supervisor, Brian Conant, and manager, Robert DePonte.  See Complaint at ¶ 15.[1]  Plaintiff's sexual harassment claim apparently was based on a single incident in which Mr. Conant verbally asked Ms. Paakaula to raise her hair to let him see if she was wearing headphones while working, which was against USPS policy.  See the Paakaula Deposition (Exhibit "E" to the Moriyama Declaration) at 100:11-102:16.  To investigate Ms. Paakaula's harassment complaint, manager Robert DePonte attempted to take her statement in his office.  A union representative attempted to assist Ms. Paakaula in making her statement, and when Mr. DePonte asked the union representative to leave, a verbal altercation resulted which Ms. Paakaula claimed triggered a PTSD episode.  See the Paakaula

---

[1] Plaintiff filed an Employment Opportunity (EEO) complaint based on this incident, which was apparently denied or dismissed. See excerpts from deposition transcript of Lori Paakaula, taken on November 20, 2003 (hereinafter the "Paakaula Deposition"), at 102:17-103:16, attached as Exhibit "E" to the Declaration of Rachel S. Moriyama (hereinafter the "Moriyama Declaration").

4

Deposition (Exhibit "E") at 97:19-99:22. As a result of this incident, Plaintiff's doctors advised the USPS that Plaintiff should not have contact with Mr. Conant or Mr. DePonte, in addition to the Laus. See Complaint at ¶ 15. Plaintiff filed a second claim for FECA benefits based on this incident which was designated as OWCP Claim No. 131202433 (hereinafter referred to as "FECA Claim #2"). See the Ueno Declaration at ¶ 7. The OWCP denied Plaintiff's FECA Claim #2 and Plaintiff did not appeal that denial. Id.

    C.    The Current Claims/FECA Claim #3.

From 1999 to June 2002, Plaintiff apparently was able to schedule her work hours so that she had no contact with the Laus, Mr. Conant or Mr. DePonte. See Complaint at ¶ 16. In June 2002, however, the USPS informed plaintiff that it had to reassign her to a different pay location and work hours because of a staff reduction caused by increased automation.[2] See excerpts from the testimony of Lori Paakaula given during the administrative EEO hearing held on December 16, 2003, at 76:9-23, a copy of which is attached as Exhibit "F" to the Moriyama Declaration. Plaintiff objected to the proposed reassignment because there was a possibility that she could be exposed to the

---

[2] In 2002, Plaintiff worked as a clerk in the Honolulu Processing and Distribution Center (hereinafter referred to as the "P&DC" or the "Plant"), which is the USPS large facility located at the Honolulu International Airport.

Laus, which she claimed could trigger her PTSD. See Complaint at ¶ 16. Among other things, Plaintiff submitted a request to the USPS' District Reasonable Accommodation Committee ("DRAC")[3] that she not be reassigned because of her mental disability (the PTSD). On or about October 3, 2002, the DRAC notified Plaintiff that her request was denied because her PTSD did not substantially limit her from performing a broad range of jobs and therefore she was not a qualified individual with a disability within the meaning of the Rehabilitation Act. See Complaint at ¶ 19. Plaintiff's request for reconsideration of the DRAC's decision was denied. See Complaint at ¶ 21.[4]

In addition to her efforts to obtain relief from the DRAC and the EEOC, Plaintiff filed a third claim for FECA benefits on October 5, 2002, which was designated as OWCP Claim No. 132063616 (hereinafter referred to "FECA Claim #3). See the Ueno Declaration at ¶ 8. In FECA Claim #3, Plaintiff claimed

---

[3] The purpose of the DRAC is to determine if an employee claiming a physical or mental disability qualifies for a reasonable accommodation under the Rehabilitation Act. If the employee is determined to be qualified, the DRAC then determines whether a reasonable accommodation exists and is available.

[4] On September 9, 2002, Plaintiff also filed an informal (EEO) complaint based on the USPS' attempt to reassign her in June 2002. See Complaint at ¶ 18. On October 24, 2002, she filed a formal EEO Complaint. See Complaint at ¶ 23. After the EEO investigation was completed, Plaintiff requested a hearing before an Administrative Judge ("AJ"). The hearing was held on December 16, 2003. Prior to the AJ's ruling however, Plaintiff filed the instant Complaint, see Complaint at ¶ 24, which mooted the administrative EEO proceeding.

that her PTSD was aggravated by the USPS' June 2002 proposal to reassign her to a shift and pay location where she could be exposed to the Laus.  Id.  On April 7, 2003, the OWCP initially denied Ms. Paakaula's FECA Claim #3, a copy of OWCP's decision is attached as Exhibit "B" to the Ueno Declaration, and on June 3, 2003, the OWCP denied Ms. Paakaula's request for reconsideration.  See the Ueno Declaration at ¶ 9.

In or about August 2003, Ms. Paakaula submitted another request for reconsideration to the OWCP.  By letters dated December 23, 2003, the OWCP granted Ms. Paakaula's request for reconsideration, vacated its April 7, 2003 and June 2, 2003 decisions, and accepted Ms. Paakaula's FECA Claim #3 based on her diagnosed condition of panic disorder.  See the Ueno Declaration at ¶ 10 and copies of the OWCP's two letters dated December 23, 2003, and an enclosure, which are collectively attached as Exhibit "C" to the Ueno Declaration.  As a result of OWCP's acceptance of FECA Claim #3, Plaintiff was awarded full workers compensation for her mental disability (panic disorder) claims arising out of the USPS's attempts to reassign her in 2002.  See Ueno Declaration at ¶ 12.  Thus, Plaintiff has been compensated under FECA for all outstanding back pay and medical costs; she is receiving appropriate medical treatment; and she has accepted a Joint USDOL/USPS Rehabilitation Program position at the Sand Island Post Office, where she has been working full-time as a

distribution clerk since January 19, 2004. See Ueno Declaration at ¶s 11-12 and a copy of the Joint USDOL/USPS Rehabilitation Program job offer and acceptance, which is attached as Exhibit "D" to the Ueno Declaration.

II. ARGUMENT

    A.   Legal Standards.

        1.   The Standard for a Motion to Dismiss.

A court must dismiss a case for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). Subject matter jurisdiction is fundamental and cannot be waived. The party seeking to invoke the jurisdiction of the court has the burden of establishing that jurisdiction exists. Scott v. Breeland, 792 F.2d 925, 927 (9th Cir. 1986). A court must dismiss an action whenever it appears that the court lacks jurisdiction. Billingsley v. C.I.R., 868 F.2d 1081, 1085 (9th Cir. 1989).

A court also may dismiss a complaint under Fed. R. Civ. P. 12(b)(6) where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."[5] Conley v. Gibson, 355 U.S. 41, 45-46 (1957);

---

[5] Regarding a motion to dismiss, courts must "accept the plaintiffs' allegations as true and construe them in the light most favorable to plaintiffs." In re Daou Systems, Inc. Securities Litigation, 397 F.3d 704, 709-10 (9th Cir. 2005). However, "[c]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." In re VeriFone Securities Litigation, 11 F.3d 865, 868 (9th Cir. 1993)(citations omitted). See also Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir.),

Moore v. City of Costa Mesa, 886 F.2d 260, 262 (9th Cir. 1989), cert. denied, 496 U.S. 906 (1990).  A complaint may be dismissed as a matter of law for either of two reasons: (1) lack of a cognizable legal theory; or (2) insufficient facts under a cognizable legal theory.  See  Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1988).

       2.   The Summary Judgment Standard.

Summary judgment is properly granted when the district court, viewing the facts in the light most favorable to the nonmoving party, finds that there are no genuine issues of material fact and that the moving party is entitled to summary judgment as a matter of law.[6]  Fed. R. Civ. P. 56(c).  One of the principal purposes of the summary judgment procedure is to identify and dispose of factually unsupported claims and defenses.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  The United States Supreme Court has declared that summary

---

cert. denied, 429 U.S. 1031 (1981)(court does not "necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations.").

[6] The standard for a grant of summary judgment reflects the standard governing the grant of a directed verdict.  See Eisenberg v. Insurance Co. of North America, 815 F.2d 1285, 1288 (9th Cir. 1987)(citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986)).  Thus, the question is whether "reasonable minds could differ as to the import of the evidence."  Anderson, 477 U.S. at 250-51.  All evidence and inferences to be drawn therefrom must be construed in the light most favorable to the nonmoving party.  T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630-31 (9th Cir. 1987).

judgment must be granted against a party who fails to demonstrate facts to establish an element essential to his case where that party will bear the burden of proof of that essential element at trial.  Celotex, 477 U.S. at 322.  A failure of proof regarding an essential element of the nonmoving party's case necessarily renders all other facts immaterial.[7]  See id. at 322-23.

"If the party moving for summary judgment meets its initial burden of identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact, the nonmoving party may not rely on the mere allegations in the pleadings in order to preclude summary judgment."  T.W. Elec. Serv., 809 F.2d at 630 (citations omitted).  Rather, Rule 56(e) requires that the non-moving party set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial. Id.  To satisfy this burden, the non-moving party must produce at least some "significant probative evidence tending to support the complaint,"[8] id., and the party opposing summary judgment "must

---

[7] The moving party has no burden to negate or disprove matters on which the non-moving party will bear the burden of proof at trial.  The moving party need only point out to the court that there is an absence of evidence to support the non-moving party's case.  See id. at 325.

[8] Legal memoranda and oral argument are not evidence and do not create issues of fact capable of defeating an otherwise valid motion for summary judgment.  British Airways Bd. v. Boeing Co., 585 F.2d 946, 952 (9th Cir. 1978).

10

do more than simply show that there is some metaphysical doubt as to the material facts."[9]  <u>Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).  "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]."  <u>United States ex rel. Anderson v. Northern Telecom, Inc.</u> 52 F.3d 810, 815 (9th Cir. 1995)(quoting <u>Anderson</u>, 477 U.S. at 252).

      B.    The Court Must Dismiss The Complaint or Enter Summary Judgment for Defendant Based Upon <u>FECA's Exclusivity Provisions.</u>

FECA establishes a comprehensive and <u>exclusive</u> workers' compensation scheme for federal employees that is administered by the Department of Labor, Office of Workers Compensation Program (OWCP).[10]  5 U.S.C. § 8102(a).  Once it is determined that an injury is within the scope of FECA's coverage, FECA's remedy is

---

[9]  "The possibility that the plaintiff may discredit the defendant's testimony at trial is not enough for the plaintiff to defeat a properly presented [summary judgment] motion."  <u>United Steelworkers of America v. Phelps Dodge Corp.</u>, 865 F.2d 1539, 1542 (9th Cir.)(<u>en banc</u>), <u>cert. denied</u>, 493 U.S. 809 (1989).

[10]  FECA provides that "the United States will pay compensation for the disability or death of an employee resulting from personal injury sustained while in the performance of his duty. . . ."  5 U.S.C. § 8102(a); 20 C.F.R. § 10.1.  A wide range of benefits is provided for work-related injuries covered by FECA, including payment of wage loss compensation, schedule awards for permanent loss or loss of use of specified members of the body, related medical costs and vocational rehabilitation.

exclusive and an employee cannot bring any other claims of suits for compensation against the government. See 5 U.S.C. § 8116(c); Lockheed Aircraft Corp. v. United States, 460 U.S. 190, 194 (1983). In Lockheed, the United States Supreme Court held:

> [The FECA exclusivity provision] was designed to protect the Government from suits under statutes, such as the Federal Tort Claims Act, that had been enacted to waive the Government's sovereign immunity. In enacting this provision, Congress adopted the principal compromise -- the "quid pro quo" -- commonly found in workers' compensation legislation: employees are guaranteed the right to receive immediate, fixed benefits, regardless of fault and without need for litigation, but in return they lose the right to sue the Government.

460 U.S. at 193-94 (citations omitted). To insure uniformity of interpretation and policy in the administration of FECA, the Secretary of Labor is vested with the power to "administer, and decide all questions arising under" FECA and the Secretary's determinations are final and not subject to review by the courts. See 5 U.S.C. §§ 8145 and 8128(b)(1) and (2). See also Rodriques v. Donovan, 769 F.2d 1344, 1348 (9th Cir. 1985) ("The structure of FECA and the language of Section 8128(b) convince us that Congress's intent was that the courts not be burdened by a flood of small claims challenging the merits of compensation decisions."). The statutory test for coverage is whether the employee was injured "while in the performance of his duty." 5 U.S.C. § 8102(a).

Courts have dismissed employment discrimination suits, citing FECA's exclusivity provisions, when they have determined that the discrimination cases arise out of the same on-the-job injuries for which FECA benefits have been sought or awarded. See, e.g., Stubler v. Runyon, 892 F. Supp. 228, 229-30 (W.D. Mo. 1994)(entering judgment as a matter of law following trial based on finding that USPS employee was barred from recovering under Rehabilitation Act for same physical condition (carpal tunnel syndrome) for which she received FECA benefits; workers' compensation benefits were exclusive remedy for on-the-job injury), aff'd, 56 F.3d 69 (8th Cir. 1995); Alexander v. Frank, 777 F. Supp. 516, 523 (N.D. Tex. 1991)(summary judgment in favor of USPS on plaintiff's Rehabilitation Act claims because FECA provides "exclusive and preemptive remedies for all work-related injuries for those employees it covers"); Black v. Frank, 730 F. Supp. 1087, 1090-1091 and 1091, n.5 (S.D. Ala. 1990)(summary judgment entered in favor of USPS because FECA benefits awarded to plaintiff are exclusive remedy; "Plaintiff can receive no additional compensation for the period during which he is paid OWCP benefits; Plaintiff's claim for additional relief must fail.").[11]

---

[11] See also Figueroa v. United States, 7 F.3d 1405, 1407-08 (9th Cir. 1993)(FTCA preempted by FECA; FECA remedy is "exclusive of all other remedies against the United States for job-related injury or death."), cert. denied, 511 U.S. 1030 (1994).

Here, the same alleged work-related mental disability (the PTSD and panic disorder caused or exacerbated by the USPS' attempt to reassign Plaintiff in June 2002) is the basis for <u>both</u> this employment discrimination case and Plaintiff's FECA Claim #3. In its decision accepting FECA Claim #3, the OWCP already has made the following findings:

> It is determined that you were exposed to Mr. and Mrs. Lau at least three times during the <u>period 6/29/02 - 10/17/02 when assigned to work area PL 250</u>, as indicated by witness statements from two coworkers, Denis J. Portera and Keith Kawagoe. This exposure was contrary to work limitations provided for you after the accepted work injury of 7/20/93, accepted for post-traumatic stress disorder, after which you returned to modified work 8/31/93, with no exposure to Mr. and Mrs. Lau. The reasons for this decision are that the two witness statements are sufficient evidence to establish that you were in fact exposed several times to Mr. and Mrs. Lau during the time period indicated above.

<u>See</u> Exhibit "C" to the Ueno Declaration (emphasis added). As the OWCP found that Plaintiff's exposure to the Laus in connection with the USPS's June 2002 attempt to reassign her caused a work-related injury and awarded her FECA benefits, the Court must dismiss the Complaint and/or enter summary judgment in Defendant's favor based on FECA's exclusivity provisions.

C.  <u>Defendant's Motion Should Be Granted Based On Mootness.</u>

The jurisdiction of the federal courts extends only to live cases and controversies. <u>See</u> U.S. Const. art. III, § 2.

This requirement persists throughout all stages of litigation. Arizonans for Official English v. Arizona, 520 U.S. 43, 67 (1997) ("[A]n actual controversy must be extant at all stages of review, not merely at the time the complaint is filed."); Steffel v. Thompson, 415 U.S. 452, 460 n. 10 (1974)(same).  If a case becomes moot, it does not satisfy the "case or controversy" requirement of Article III of the Constitution and "the federal courts are powerless to decide it."  SEC v. Medical Committee for Human Rights, 404 U.S. 403, 407 (1972).[12]  "A case becomes moot whenever it 'los[es] its character as a present, live controversy of the kind that must exist if we are to avoid advisory opinions on abstract propositions of law."  Cantrell v. City of Long Beach, 241 F.3d 674, 678 (9th Cir. 2001)(quoting Hall v. Beals, 396 U.S. 45, 48 (1969)).  See Foster v. Carson, 347 F.3d 742, 747 (9th Cir. 2003)("We do not have the constitutional authority to decide moot cases.").  "Simply stated, a case is moot when the issues are no longer 'live' or the parties lack a legally cognizable interest in the outcome."  County of Los Angeles v. Davis, 440 U.S. 625, 631 (1979).

The Ninth Circuit has held that in determining whether a claim is moot, "the question is whether there can be any

---

[12] A federal court lacks jurisdiction "to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue before it."  Church of Scientology v. United States, 506 U.S. 9, 12 (1992).

effective relief."[13] Cantrell, 241 F.3d at 678.  In the instant case, there is no dispute that the OWCP vacated its initial denial of FECA Claim #3, and accepted Plaintiff's claim based on the same work-related mental disability that underlies this discrimination case (i.e., her PTSD and panic disorder caused or exacerbated by the USPS' attempt to reassign her in June 2002). The OWCP awarded Plaintiff full workers compensation benefits, including back pay (she does not need front pay since she is currently working in a full time rehabilitation position) and medical treatment.  See the Ueno Declaration at ¶s 11-12.  As Plaintiff has received FECA benefits pursuant to her FECA Claim #3, there is no further relief that this Court can grant that is not subject to FECA's exclusivity provisions.  Consequently, the Court must dismiss this Complaint and/or enter summary judgment in favor of Defendant on mootness grounds.

    D.    The Court Must Dismiss Plaintiff's Retaliation Claim And/Or Enter Summary Judgment In Favor Of Defendant.

To state a prima facie case for retaliation, a plaintiff must establish each of the following: (1) involvement

---

[13] Suits to review administrative action may become moot when the challenged agency decision is rescinded, superceded, or has expired.  See, e.g., Forest Guardians v. United States Forest Service, 329 F.3d 1089, 1096 (9th Cir. 2003) (challenge to Biological Opinion mooted when subject opinion superseded by later opinion); American Rivers v. National Marine Fisheries Service, 126 F.3d 1118, 1123 (9th Cir. 1997)(same); Nome Eskimo Cmty. v. Babbitt, 67 F.3d 813, 815 (9th Cir. 1995)(case mooted when challenged lease sale was cancelled due to lack of bids).

in a protected activity; (2) an adverse employment action; and (3) a causal link between the two.  See Coons v. Secretary of U.S. Department of Treasury, 383 F.3d 879, 887 (9th Cir. 2004); Brown v. City of Tucson, 336 F.3d 1181, 1187 (9th Cir. 2003). The plaintiff must present "evidence adequate to create an inference that an employment decision was based on a[n illegal] discriminatory criterion."  O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308, 312 (1996)(emphasis deleted) (citation omitted).  Here, Plaintiff alleged that the adverse action occurred in June 2002, when she was informed that she would be reassigned to a shift and pay location where she could be exposed to the Laus in violation of her claimed medical restrictions.  See Complaint at ¶ 16.  Plaintiff did not engage in any protected activity at or near the time of this so-called retaliatory action.  Plaintiff did not filed her informal EEO complaint based on the June 2002 proposed reassignment until September 9, 2002, see Complaint at ¶ 18 and Note 4, supra, well after the alleged adverse action had occurred.[14]  In addition, Plaintiff admitted at deposition that she had no evidence that any of the USPS supervisors involved in the June 2002 attempted reassignment were aware that she had filed any EEO action.  See

---

[14] Plaintiff's earlier unrelated EEO activity occurred in 1999, nearly three years prior to the alleged adverse action, see Note 1, supra, and thus, cannot satisfy the causal connection element required to prove a prima facie case for retaliation.

17

the Paakaula Deposition (Exhibit "E" to the Moriyama Declaration) at 112:9-24.  Based on the foregoing, Plaintiff cannot establish the causal connection element required to satisfy her burden to prove retaliation.  Accordingly, this Court must dismiss Plaintiff's retaliation claim for failure to state a claim and/or enter summary judgment in favor of the Defendant.

III. <u>CONCLUSION</u>

For the foregoing reasons, Defendant urges the Court to dismiss the Complaint and/or to enter summary judgment in favor of Defendant on all claims asserted by Plaintiff.

DATED:  January 27, 2006, at Honolulu, Hawaii.

EDWARD H. KUBO, JR.
United States Attorney
District of Hawaii

/s/ Rachel S. Moriyama
By_____
  RACHEL S. MORIYAMA
  Assistant U.S. Attorney

Attorneys for Defendant