# Exhibit "B"
## (to Declaration of Alan Y. Ueno)

File Number: 132063616

1042-D-I

U.S. DEPARTMENT OF LABOR

EMPLOYMENT STANDARDS ADMINISTRATION
OFFICE OF WORKERS' COMPENSATION PROGRAMS
PO BOX 8300        DISTRICT 13
LONDON  KY  40742-8300
Phone: (415) 848-6700

( 16 of 27 )

April 7, 2003

Date of Injury:  09/05/2002
Employee:     Lori Paakaula

LORI L. PAAKAULA
86-050 HOAHA ST
WAIANAE, HI 96792

Dear Ms. Paakaula:

Your claim for compensation benefits has been disallowed for the reason stated in the enclosed
copy of the formal decision.  This was based on all evidence of record and on the assumption
that all available evidence has been submitted.  If you disagree with the decision, you may
follow any one of the courses of action outlined on the attached appeal rights.

Further medical treatment at OWCP expense is not authorized and prior authorization, if any, is
hereby terminated.

Under Office of Personnel Management (OPM) regulations, career and career conditional
employees who recover from a compensable injury within one year are entitled to mandatory job
restoration and are expected to apply for work with the employing Federal agency immediately
upon recovery.  Career and career conditional who recover more than one year after the injury
are entitled to priority consideration, provided they apply for reemployment within 30 days after
compensation ceases.  You should obtain further information concerning restoration rights from
your agency or any OPM area office (if you are a postal employee, contact your local personnel
office).  You should also contact your former employing agency or OPM for advice on continuing
any health insurance and/or life insurance coverage.

Sincerely,

Leah Wells
Senior Claims Examiner

Enclosures:  Formal decision with appeal rights

US POSTAL SERVICE
HONOLULU MGT SECT CNTR
ATTN: INJURY COMP SUPERVISOR
3600 AOLELE STREET
HONOLULU, HI 96820

537CCC9

EXHIBIT "B"

£6    owcp letter 4/15/03

# FEDERAL EMPLOYEES' COMPENSATION ACT APPEAL RIGHTS

READ THIS NOTICE CAREFULLY AND SPECIFY CLEARLY WHICH PROCEDURE YOU WISH TO REQUEST: HEARING (WRITTEN OR ORAL); RECONSIDERATION; OR APPEALS BOARD REVIEW. You may not request two forms of appeal at the same time. Be sure to send your request to the right address. **Please mark the outside of the envelope as "Reconsideration", "Hearing Request", or "ECAB Appeal" as appropriate.**

HEARING: If your injury occurred on or after July 4, 1966 and you have not requested reconsideration, as described below, you may request an oral hearing before an OWCP representative. Such a request must be made in writing, within 30 days after the date of this decision, as determined by the postmark of your letter. At an oral hearing you will be given the opportunity to present oral testimony and written evidence in further support of your claim. The hearing will be informal and will be held at a location in your area. You may be represented at the hearing by any person authorized by you in writing.

If your injury occurred on or after July 4, 1966, and you have not requested reconsideration, you may instead request an examination of the written record by a hearing representative appointed by the Director. This examination must be requested within 30 days of the date of this decision. You will not be asked to attend or give oral testimony, but you may submit additional written evidence. You will have this review instead of an oral hearing. Any additional written evidence you want to submit must be sent with your request for review.

To protect your right to a hearing, the request for oral hearing or review of the written record must be sent to the Branch of Hearings and Review, Office of Workers' Compensation Programs, P. O. Box 37117, Washington, D. C. 20013-7117. Any request for a hearing (written or oral) must be made before any request for reconsideration by the District Office (5 U.S.C. 8124(b)(1)). You will have the right to request reconsideration or appeal of the hearing representative's decision if you disagree with it.

RECONSIDERATION: If you have additional evidence which you believe is pertinent, you may request, in writing, that OWCP reconsider this decision. Such a request must be made within one year of the date of the decision, clearly state the grounds upon which reconsideration is being requested, and be accompanied by relevant evidence not previously submitted, such as medical reports or affidavits, or a legal argument not previously made. Your request for reconsideration and the new evidence you are submitting should be sent to the District Office at the address which appears on the accompanying letter. In order to ensure that you receive an independent evaluation of the evidence, your case will be reconsidered by persons other than those who made this determination.

APPEAL: If you believe that all available evidence has been submitted, you have the right to appeal to the Employees' Compensation Appeals Board, 200 Constitution Ave., N.W., Room N-2609, Washington, D. C. 20210. If you should request a hearing or reconsideration by the Office of Workers' Compensation Programs as indicated above, the 90 day period within which you may request review by the Appeals Board will run from the date of any later decision by the OWCP. For good cause shown, the Appeals Board may waive the failure to file within 90 days if application is made within one year from the date of the decision being appealed.

537CC010

2)    KWCP 4/15/03

MTD-MI-M

**MEMORANDUM TO THE DIRECTOR**

**IN THE CASE OF LORI PAAKAULA**

( 13 of 27 )

**Date: 04/07/03**

The issue for determination is whether the claimant has sustained an emotional condition in the performance of her duty as a Federal employee.

Under the Federal Employees' Compensation Act (FECA), the claimant seeking benefits has the burden of establishing the essential elements of his or her claim by the weight of reliable, probative and substantial evidence, including that he or she sustained an injury in the performance of duty as alleged. Workers' Compensation law does not apply to each and every illness that is somehow related to one's employment. There are situations when an injury or illness has some connection with the employment but nevertheless does not come within the coverage of workers' compensation. When the disability results form employees' emotional reaction to his or her day-to-day, regular duties, to specially assigned duties, or to a requirement imposed by the employment, the disability comes within the coverage of the FECA. On the other hand, the disability is not covered when it results from factors such as the employees' preference for certain assignments over others, discussions of performance, or other administrative matters. Therefore, it is necessary to differentiate between those employment incidents that are considered to have occurred in the performance of duty, and those that are not compensable incident in the performance of duty. There is also a third group comprising incidents that are alleged to have occurred by the claimant, but that are not established as factual. If incidents are established as both factual and as having occurred in the performance of duty, the medical evidence must demonstrate that any diagnosed condition is causally related to the established work factors.

The claimant timely filed form CA-2, Notice of Occupational Disease and Claim for Compensation, dated 10/05/02. She claimed aggravation of her Post Traumatic Stress Disorder was caused by her Federal employment as a Postal Clerk while working for the US Postal Service in Honolulu Hawaii.

Submitted with her claim was Ms. Paakaula's statement to Mr. Shimabukuro dated 06/24/02, Ms. Paakaula's Report of Hazard, Unsafe Condition Or Practice, dated 09/19/02 and 10/03/02; Kenneth Tanibe, FMLA Coordinator's letter dated 07/31/02; correspondence from Tonya Hunter, RN, dated 07/25/02; Halford Shimabukuro, Distribution Manager's letter dated 10/03/01, email correspondence from Dr. Steadman dated 07/02/02.

By letter dated 11/01/02, the claimant was notified that the issues or events that occurred with regard to her previous claim 13-1202433 (denied by formal decision dated 11/08/01), would not be discussed in this case and would have no bearing on the issues of this claim.

In the above noted letter the claimant was requested to submit additional factual and medical information. The claimant was advised that a comprehensive medical report from a qualified physician explaining the relationship between the claimed conditions and her Federal employment, among other items, would be necessary to establish the claim for compensation. The claimant was specifically requested to elaborate on and provide sufficient detail of many of the allegations she made. She was also requested to provide details of all prior emotional conditions, excluding her previous case, 13-1202433.

5370011

(3)

owc P   4/15/03

File Number: 13-2063616

MTD-MI-M

In response, we received two letters from Ms. Paakaula, one undated, the other dated 12/30/02. We received Ms. Paakaula's Employee Personal Interview Statement; Ms. Paakaula's Report of Hazard, Unsafe Condition or Practice, dated 09/06/02; Ms. Paakaula's statement to Glen Sakagawa dated 08/15/02; to Bob Hogan dated 10/15/02; and to Halford Shimabukuro dated 12/23/02. Notice of Right to File Formal Complaint dated 10/07/02; American Postal Workers Union, AFL-CIO Grievance dated 10/18/02; USPS Job Bidding, dated 10/18/02; Continuation from the Informal Complaint, dated 10/22/02; Notice of Right to File Individual Complaint, dated 10/07/02; EEO Complaint of Discrimination in the Postal Service, dated 10/23/02 and resolution Inquiry Report, dated 11/07/02. We also received numerous leave slips and leave breakdown from 01/12/02 to 01/10/03; medical notes from 08/11/93 to 11/09/09; two email correspondences from Dr. Steadman dated 10/09/02; an undated statement from APWU Steward, James Waimau; letter from Edward Broglio dated 12/06/99, 09/23/02; letter from Manager, Distribution Operations, Clara Nahooikaika, dated 12/13/99; statement from APWU Clerk Craft Director, Joreen Ha'ae, dated 09/12/00; letter from Halford Shimabukuro, dated 06/14/02 and 12/20/02; Senior Manager, Glen Sakagawa Memorandum dated 09/05/02; Shop Steward, Larry Mayfield statement date 09/30/02; Honolulu Reasonable Accommodation Committee, Lloyd Nakata's statement dated 10/03/02; SPHR, Robert Hogan's letter dated 11/01/02; and Manager, EEO Dispute Resolution, Lindy Hashimoto's memorandum, dated 11/07/02. Nothing further was submitted in support of the claim.

The claimant's allegations and her employing agency comments have been reviewed to determine whether they occurred in the time, place and manner alleged. On review, I find that while most of the allegations are established as having occurred, some did not occur exactly as alleged; as for the items which are established as having occurred, these are found to have NOT arisen in the performance of duty, per the Federal Employees' Compensation Appeals Act (FECA). Thus, I find that the claimant has not established that compensable factors of her employment led to her claimed psychiatric condition.

In connection with this conclusion, the following findings of fact are made. In these, the allegation of the claimant is present (in somewhat condensed form) in normal typeface. The Office's findings as to whether the allegation is established and, if so, whether or not it arises out of performance of duty, is presented in *italic* typeface.

After reviewing the claimant's statement, it has been determined that she has alleged the following events contributed to her condition:

1.     The claimant alleges that in assigning her to PL 250, the agency violated her medical restrictions. These restrictions prohibit contact with Mr. and Mrs. Lau, SDO Brian Connant, and MDO Bob DePonte. The claimant also states that the limited duty assignment effective 12/30/02 is in conflict with the doctor's work restrictions. The supervisor is Ms. Lori Fines; however, in her absence it would be supervisor Darrell Snyder. The claimant states that these people are under the supervision and jurisdiction of Tour 1 MDO Bob DePonte or SDO Brian Conant when he is the Acting MDO in Bob DePonte's absence.

*The claimant is alleging that the employing agency violated her medical restrictions, re-assigning her within the vicinity of the known aggressors. It is accepted that the claimant's medical restrictions include no contact with four individuals, Mr. and Mrs. Lau, SDO Brian Connant and MDO Bob DePonte. The claimant states, "When I see the assailants who are still employed…and [am] placed in the same work shift as they are, this causes a setback and my condition worsens." The claimant did not explain what type of contact occurred or how it has affected her or her work. Her statement of "see[ing] the assailants" is not specific enough to explain under what conditions she observed these people; whether she saw them from across the work counter, work area, warehouse floor, parking lot, or outside of her work environment. Her statements do not explain what the individuals were doing, whether they interacted with the claimant by conversation, eye contact, wave, or just going about their business.*

5370012

*While it is established that the claimant was re-assigned to PL 250 the claimant has not established that she in fact had contact with the above–named individuals.*

*ECAB has held that where a claim is predicated upon the injury provision of Section 1 of the FECA, the injury must be established by proof of occurrence of an accident or fortuitous event having relative definiteness in respect to time, place, and circumstances; while the injury need not be established by the testimony of witnesses, the statement of injury must be supported by the surrounding facts and circumstances that an event occurred. (Ernest Mills, 8 ECAB 87 (1955))  It is clear that she feared there would be contact as a result of the duty shift, but no contact has been established.*

*However, if the claimant were to establish the facts of her injury, a change in a duty shift would not be a compensable factor per se.  The factual circumstances surrounding the employee's claim must be examined to discern whether the alleged injury is being attributed to the inability to work regular or specially assigned job duties due to a change in the duty shift, i.e., a compensable factor arising out of and in the course of employment, or to the employee's frustration over not being permitted to work a particular shift.  The assignment of a work schedule or tour of duty is an administrative function of the employing establishment and, absent any error or abuse, does not constitute a compensable factor of employment. (Peggy R. Lee, 46 ECAB ___ (Docket No. 93-2125, issued February 15, 1995))  And reactions to such are considered to be self-generated, as it is the claimant's desire to work in a particular environment or on a particular shift with specific days off, (Lillian Cutler, 28 ECAB 125).*

*The claimant has not established that the agency has erred or abused its authority in her reassignment. The claimant has filed an EEO complaint, but as yet there have been no Findings of Fact submitted.*

2. The claimant alleges that in assigning her to PL 150 per letter from SM Sakawawa, dated 09/05/02, the agency would be placing her in a position that is in conflict with her medical restrictions.

*In an email reply from Alan Ueno, dated 03/20/03, he states that in his conversation with Manager Halford Shimabukuro, the claimant, since filing her claim, did not work in PL 150.*

*The announcement or proposal of a change in an existing tour of duty will not be found a compensable factor sufficiently related to the employee's regular or specially assigned employment duties so as to arise in the course of employment. Peggy R. Lee, 46 ECAB ___ (Docket No. 93-2125, issued February 15, 1995).*

3. The claimant states that because of the reassignments she was forced to take FMLA leave.

*It is established that the claimant used FMLA leave upon her reassignment. However, because the claimant has not established error or abuse on the part of the agency in association with her reassignments the claimant's allegation to being "forced" to take FMLA leave is not established. As previously stated in the above allegation, absent any error or abuse, a change in shift or work duties does not constitute a compensable factor of employment. Therefore, instructions to leave the employment if sufficient work cannot be found, or the fear of being injured will not be found compensable factors sufficiently related to the employee's regular or specially assigned employment duties so as to arise in the course of employment. Peggy R. Lee, 46 ECAB ___ (Docket No. 93-2125, issued February 15, 1995).*

5370013

(5)

owcp 4/15/85

File Number: 13-2063616
MTD-MI-M

4.    The claimant has alleged that she is forced to be placed in a schedule that was neither her original schedule nor her schedule shift prior to taking FMLA leave.

*As previously stated the assignment of a work schedule or tour of duty is an administrative function of the employing establishment and, absent any error or abuse, does not constitute a compensable factor of employment. Peggy R. Lee, 46 ECAB ___ (Docket No. 93-2125, issued February 15, 1995).*

While some of the incidents are accepted as factual, they are not considered to be in POD, as they are not accepted as having arisen in or out of the claimant's Federal employment. Specifically, they are not part of her regular or specially assigned duties, nor are they a requirement imposed upon her by the Agency or by the nature of the work. Most of the above events involve personnel actions taken by a supervisor acting within his or her administrative discretion as a supervisor. The ECAB has ruled that administrative actions taken by the employing agency cannot be considered to have occurred within the performance of Federal duty, unless there is compelling evidence that the agency either erred or acted abusively in administering these matters. In the present case, there is no such evidence.

In cases involving emotional conditions, it is not necessary to address the medical evidence unless and until the claimant has identified incidents or occurrences that are alleged to have arisen out of the performance of duty. However, even if it were found that an event occurred within the performance of duty, the medical evidence would be insufficient to support that the claimant sustained an emotional condition while in the performance of duty. The claimant would need to submit substantive medical evidence that supports her diagnosed condition as causally related to the factors of employment that are accepted as occurring within the performance of duty.

CONCLUSION:
It is recommended that the claim for an emotional condition be denied as the evidence of record fails to establish that the claimant sustained an emotional condition while in the performance of duty.

Ivy Anway
Claims Examiner

*I agree.*

4/7/03

5370014