I.    STATEMENT OF THE CASE

Plaintiff has been employed as a Postal Clerk since 1983. Between 1983 and 1993.

On July 17, 1993, Plaintiff witnessed a fight in the workplace in which two co-workers, Rodney and Ann Lau ("Laus") attacked a single co-worker.  This fight took place within a few feet of the Plaintiff's location.  Despite postal regulations which required that postal employees be removed from the workplace upon being involved in a physical altercation, the Postal Service took no action to remove the Laus from the workplace.

As a result of witnessing the fight and the failure of the Postal Service to promptly remove the Laus from the workplace, Plaintiff suffered severe anxiety attacks coupled with flashbacks of the fight and fears for her own physical safety.  Plaintiff was unable to work and filed a stress claim with the Office of Workers' Compensation Program ("OWCP"), which claim was eventually accepted by the OWCP.

As a result of her severe anxiety and stress resulting from the fight, Plaintiff required medical treatment which was primarily provided by Dr. Margaret Steadman, a clinical psychologist.  Plaintiff has also been treated by a psychiatrist, Dr. Shepard Ginandes.  Plaintiff's medical

1

providers have diagnosed her mental condition as Posttraumatic
Stress Disorder ("PTSD") which was triggered by Plaintiff's
contact with the Laus; Plaintiff's medical providers advised
the Postal Service that as a means of accommodating
Plaintiff's mental condition, she had to work at a site in
which she had no contact with the Laus.

As a result of the acceptance of her OWCP claim as well
as the medical directives of the Plaintiff's medical
providers, the Postal Service accommodated Plaintiff's mental
condition by arranging her work hours so that she had no
contact with the Laus from 1993 to 2002.

In September 1999, Plaintiff's PTSD was exacerbated by
the harassment by her immediate supervisor, Bryan Conant
("Conant") and manager, Bob De Ponte ("De Ponte") when she
made an EEO complaint of harassment against Conant.  As a
result of this incident, Plaintiff's medical providers
instructed the Postal Service that Plaintiff not have contact
with the Laus, Conant and De Ponte.

From September 1999 to June 2002, the Postal Service
assigned the Plaintiff to work at sites and shifts where she
had no contact with the Laus, Conant or De Ponte.  On June 14,
2002, Plaintiff was instructed to report to the Main Post
Office which she would have contact with the Laus.  When the

Plaintiff initially objected to this assignment, the Postal Service placed her temporarily at a different work site from September 6, 2002 to October 4, 2002.

In July 2002, Plaintiff made a request for reasonable accommodation for her medical disability to the District Reasonable Accommodation Committee ("DRAC") of the Honolulu District Office of the Postal Service.

On September 9, 2002, Plaintiff filed an informal complaint of discrimination with an EEO counselor of the Postal Service.

On October 3, 2002, the DRAC advised Plaintiff that it had denied her request for reasonable accommodation on the basis that it had determined that her "health disorder does not substantially limit (Plaintiff) from performing a broad category of jobs."

On October 15, 2002, Plaintiff submitted a request for reconsideration of the DRAC's decision to Robert Hogan, the Postal Service's Human Resources Manager.  On November 1, 2002, Mr. Hogan denied Plaintiff's request for reconsideration of the DRAC's denial of reasonable accommodation.

On October 24, 2002, Plaintiff filed her formal administrative complaint of discrimination with the Postal Service.  On January 30, 2004, Plaintiff filed this action

3

contending that Defendant's alleged conduct constituted unlawful disability and reprisal discrimination in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 791, et seq.

On January 27, 2006, Defendant filed his Motion to Dismiss Complaint and/or for Summary Judgment, contending that Plaintiff's Complaint must be dismissed as Plaintiff received compensation under the Federal Employees Compensation Act ("FECA"), and that FECA provides the exclusive remedies for the disability and death of a federal employee resulting from personal injury sustained on the job.

Plaintiff hereby submits her opposition memorandum.

## II.    ARGUMENT

### A.    Standard of Review

#### 1.    Motion to Dismiss under Fed.R.Civ.P. 12(b)(1)

A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears. Stock West, Inc. v. Confederated Tribes, 873 F.2d 1221, 1225 (9th Cir. 1989). The plaintiff therefore always bears the burden of establishing subject matter jurisdiction. See, e.g., KVOS, Inc. v. Associated Press, 299 U.S. 269, 278, 81 L. Ed. 183, 57 S. Ct. 197 (1936).

A motion to dismiss for lack of subject matter jurisdiction may either attack the allegations of the

4

complaint or attack the existence of subject matter jurisdiction in fact.  Thornhill Publishing Co. v. General Telephone & Electronics Corp., 594 F.2d 730, 733 (9th Cir. 1979).  Where the jurisdictional issue is separable from the merits of the case, the judge may consider the evidence presented with respect to the jurisdictional issue and rule on that issue, resolving factual disputes if necessary.  Id.

While a court must give deference to a plaintiff's factual allegations when considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court is not obligated to take plaintiff's allegations as true when considering a motion to dismiss for lack of jurisdiction under Rule 12(b)(1).  Id.

### 2.    Motion to Dismiss under Fed.R.Civ.P. 12(b)(6)

A complaint should not be dismissed under Fed.R.Civ.P. 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46, 2 L.Ed.2d 80, 78 S.Ct. 99 (1957).  All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party.  Western Reserve Oil & Gas Co. v. New, 765 F.2d 1428, 1430 (9th Cir. 1985), cert. denied, 474 U.S. 1056, 88 L.Ed.2d 773, 106 S.Ct. 795 (1986).

If "matters outside the pleading are presented to and not excluded by" the district court, a motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6) "shall be treated as one for summary judgment" under Fed.R.Civ.P. 56. Ft. Vancouver Plywood Co. v. United States, 747 F.2d 547, 552 (9th Cir. 1987) (quoting, Fed.R.Civ.P.12(b)(6).

### 3.    Summary Judgment

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).  In applying this standard, the court must construe all facts and reasonable inferences therefrom in the light most favorable to the nonmoving party.  See, Matsushita Electronic Industries. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 89 L.Ed.2d 538, 106 S.Ct. 1348 (1986).

Once the moving party has carried its burden of indicating that there is no genuine issue of material fact, Rule 56(c) requires the nonmoving party to go beyond the pleadings by affidavits, or by the depositions, answers to interrogatories and admissions on file, designate specific facts showing that there is a genuine issue of material for

6

trial.  See, Celotex Corp. v. Catrett, 477 U.S. 317, 91
L.Ed.2d 265, 106 S.Ct. 2548 (1986).  The nonmoving party must
make a showing sufficient to establish the existence of an
element essential to that party's case, and on which that
party will bear the burden of proof at trial.  Id. at 322.
The mere existence of a scintilla of evidence in support of
the nonmoving party's position is insufficient; there must be
evidence on which the jury could reasonably find for the
nonmovant.  See, Anderson v. Liberty Lobby, Inc., 477 U.S.
242, 91 L.Ed.2d 202, 106 S.Ct. 2505 (1986).

**B.  FECA Does Not Precludes Plaintiff's Claims of Disability Discrimination Under the Rehabilitation Act.**

5 U.S.C.§ 8101, Definitions, states in part:

> For the purpose of this subchapter [5
> U.S.C. §§ 8101 et seq.]

* * *

> (5) "injury" includes, in addition to
> injury by accident, a disease proximately
> caused by the employment, and damage to or
> destruction of medical braces, artificial
> limbs, and other prosthetic devices which
> shall be replaced or repaired, and such
> time lost while such device or appliance is
> being replaced or repaired; except that
> eyeglasses and hearing aids would not be
> replaced, repaired, or otherwise
> compensated for, unless the damages or
> destruction is incident to a personal
> injury requiring medical services.

5 U.S.C. § 8102, Compensation for disability or death of employee, states in part:

> (a) The United States shall pay compensation as specified by this subchapter [5 U.S.C. §§ 8101 et seq.] for the disability or death of an employee resulting from personal injury sustained while in the performance of his duty, unless the injury or death is -
> (1) caused by willful misconduct of the employee;
> (2) caused by the employee's intention to bring about the injury or death of himself or of another; or
> (3) proximately caused by the intoxication of the injured employee.

5 U.S.C. § 8106, Partial disability, states in part:

> (a) If the disability is partial, the United States shall pay the employee during the disability monthly monetary compensation equal to 66 2/3 percent of the difference between his monthly pay and his monthly wage-earning capacity after the beginning of the partial disability, which is known as his basic compensation for partial disability.

5 U.S.C. § 8110, Augmented compensation for dependents, states in part:

* * *

> (b) A disabled employee with one or more dependents is entitled to have his basic compensation for disability augmented--
> (1) at the rate of 8 1/3 percent of his monthly pay if that compensation is payable under section 8105 or 8107(a) of this title [5 U.S.C. § 8105 or 8107(a)];

8

> (2) at the rate of 8 1/3 percent of the
> difference between his monthly pay and his
> monthly wage-earning capacity if that
> compensation is payable under section
> 8106(a) of this title [5 U.S.C.§ 8106(a)].

5 U.S.C.§ 8116, Limitations on right to receive

compensation, states in part:

> (c) The liability of the United States or
> an instrumentality thereof under this
> subchapter [5 U.S.C. §§ 8101 et seq.] or
> any extension thereof with respect to the
> injury or death of an employee is exclusive
> and instead of all other liability of the
> United States or the instrumentality to the
> employee, his legal representative, spouse,
> dependents, next of kin, and any other
> person otherwise entitled to recover
> damages from the United States or the
> instrumentality because of the injury or
> death in a direct judicial proceeding, in a
> civil action, or in admiralty, or by an
> administrative or judicial proceeding under
> a workmen's compensation statute or under a
> Federal tort liability statute. However,
> this subsection does not apply to a master
> or a member of a crew of a vessel.

In Morris v. Roche, 182 F. Supp. 2d 1260 (M.D. Ga. 2002),

plaintiff claimed that he was discriminated against based upon

a disability caused by a work-related injury to his right knee

in 1991, in violation of the Rehabilitation Act.  Defendant

moved for summary judgment contending in part that FECA

provided plaintiff the sole remedy.  Id. at 1266.

The court in Morris noted that initially defendant argued

that the court lacked jurisdiction because a decision of the

9

Secretary of Labor about a Federal Employee's Compensation Act ("FECA") matter is not reviewable by a federal court, citing 5 U.S.C. §8128(b). However, the court determined § 8128(b) was inapplicable since plaintiff was not challenging a decision from the Secretary regarding benefits received. Rather, plaintiff sought different relief under different statutes for a different injury. Id. at 1273.

The court in Morris noted that defendant's primary argument is that despite the broad remedial purposes of the Rehabilitation Act, the exclusivity provision in § 8116(c) precludes plaintiff's claim for disability discrimination because he received FECA benefits for his benefits. Id. at 1273. However, the court noted that several courts have held that recovery of FECA benefits does not bar a subsequent claim for discrimination. Id. at 1274 (citations omitted). Therefore, it concluded that FECA did not preclude a federal employee who recovers FECA benefits from bringing a subsequent claim under the Rehabilitation Act for disability discrimination based on a disability caused by the work-related injury. Id. at 1275-1276.

In reaching its conclusion, the court in Morris relied upon the plan language of § 8101(5) and the legislative history of § 8116(c). Section 8105(5) definition of "injury"

10

as an "injury by accident." This language unambiguously indicates that disparate treatment discrimination cannot, as a matter of law, fit within FECA's definition of "injury" because such discrimination is an intentional – not accidental – act. Thus, the harm suffered by a victim of disability discrimination is not an injury within the meaning of FECA. Id. at 1275.

The court in Morris looked at the legislative history of § 8116(c), which clearly showed that Congress did not intend a result contrary to the plain language of § 8101(5). The legislative history reflects that Congress designated FECA to be a substitute only for common-law tort actions. Id. at 1276, citing, S.Rep. No.836, 81st Cong., 1st Sess. (1949), reprinted in 1949 U.S.C.C.A.N. 2135, 2136, 2143. The common law did not recognize workplace discrimination as a viable cause of action. Id. at 1276, citing, Nix v. WLCY Radio/Rahall Communications, 738 F.2d 1181 (11th Cir. 1984).

The court in Morris also noted that § 8116(c) was enacted in 1949, and Congress obviously made no reference in the legislative history as to the effect of the exclusivity provision on claims under the yet-to-be-enacted Rehabilitation Act. More importantly, there appears no indication in the legislative history of either the Rehabilitation Act or the

11

Rehabilitation, Comprehensive Services, and Developmental Disabilities Amendments of 1978 (which created a private cause of action against the federal government under § 501) that Congress intended for an action under § 501 to be precluded by recovery of FECA benefits. The absence of any such indication confirmed the court's conclusion that Congress did not intend for recovery under FECA to preclude § 501 remedies. Id. at 1277.

Furthermore, the dissimilarity of relief available under FECA and the Rehabilitation Act means that a federal employee who recovers FECA benefits will not be fully compensated for any disability discrimination he suffers subsequent to his work-related injury unless he can also bring a Rehabilitation Act claim. Thus, such a bar would frustrate Congress's purposes in enacting the Rehabilitation Act, because it provides much greater and different relief than FECA. For example the maximum that a plaintiff can recover under FECA is 75 percent of his salary; whereas, under § 501 of the Rehabilitation Act, the plaintiff is entitled to the same remedies set forth in § 717 of the Civil Rights Act of 1964, including 100 percent back pay, compensatory damages, and attorneys' fees. Id. at 1277, citing, 42 U.S.C. § 2000e-5(g); 42 U.S.C. § 1981a; 29 U.S.C. § 794(a); See also, Miller v.

Bolger, 802 F.2d 660 (3rd Cir. 1986) (Same interpretation in
Title VII context.)

The court in Morris further determined that any back pay
plaintiff recovers in his Rehabilitation Act claim must be
reduced by the amount he received in FECA benefits already
paid to him during the relevant time period.  However, the
amount of FECA benefits already paid to plaintiff has no
effect on any other type of relief that plaintiff might
recover, such as compensatory damages.  Id at 1278.

In Dubee v. Henderson, 56 F.Supp.2d 430 (D.Vt. 1999),
plaintiff was employed with the postal service.  Plaintiff
filed an administrative claim against the postal service
alleging sexual harassment by a coworker.  As a result of the
harassment, plaintiff suffered from PTSD.  The postal service
settled this claim and plaintiff received lost wages and
medical benefits under FECA.  Id. at 431-432.

Plaintiff subsequently subjected to retaliatory
harassment by other employees, and suffered recurrent symptoms
of PTSD and fibromyalgia.  Plaintiff also filed for FECA
benefits.  Plaintiff also sued defendant alleging retaliatory
harassment in violation fo Title VII and failure to
accommodate in violation of the Rehabilitation Act.  Defendant
filed a motion to dismiss contending in part that plaintiff's

13

Title VII and Rehabilitation Act claims are barred by her
application for and receipt of FECA benefits. Id. 432

The court in Dubee rejected defendant's argument.
Similarly to the court in Morris, it noted that several courts
have held that receipt of FECA benefits does not bar Title VII
or Rehabilitation Act claims.  Those opinions founded a
perceived distinction between the purposes of FECA as opposed
to Title VII and the Rehabilitation Act, as well as the
available remedies under each legislative scheme.  Id. at 433
(citations omitted).

In effect, FECA is a "no fault" insurance policy which
saves the government and its employees the expenses and
uncertainty of litigation regarding personal injuries related
to the workplace.  FECA does not provide relief for injuries
due to discrimination, nor does it compel relief for disabled
employees seeking reasonable accommodations in the workplace
as do the broader Title VII and Rehabilitation Act.  Id. at
433.

As the lawsuit alleged intentional acts of discrimination
by defendant, and a core aspect of the request for relief is
equitable, the court in Dubee determined that the harm
complained of, and the relief sought by plaintiff fell outside
the FECA parameters.  Id. at 433.

14

In <u>Nichols v. Frank</u>, 42 F.3d 503 (9th Cir. 1994), a
female employee of the U.S. Postal Service was sexually
harassed by her supervisor and was constructively discharged
because of these unwelcome advances.  As a result of the
harassment, she suffered PTSD, for which she was given
workers' compensation benefits under FECA.  After trial, she
was awarded 100% back pay minus the amount she received in
federal employees' workers' compensation benefits. The Ninth
Circuit compared the language of 5 U.S.C. §8116(c) with 42
U.S.C. §2000e-5(g) and rejected defendants' argument that the
FECA provided plaintiff her exclusive remedy.  However it held
that her damages award under Title VII must be reduced by the
amount of her disability benefits under the FECA so that she
would not receive a double recovery.  <u>Id</u>. at 515-16.

In <u>Miller v. Bolger</u>, a interlocutory appeal, the issue
was whether plaintiff, a postal employee, was precluded from
proceeding with his Title VII suit against the postal service
because he was recovering compensation under FECA.  Plaintiff
alleges that as a result of his testimony at a Civil Service
Commission hearing on behalf of a coworker, plaintiff was
subjected to harassment and physical attack by other employers
which rendered him permanently disabled.  Plaintiff received
FECA benefits as the Department of Labor determined his

15

disability was the result of on-the-job injuries.  The

district court denied defendant's motion for summary judgment,

and filed the interlocutory appeal.  Id. at 662

    Similarly to the cases above, the Third Circuit in Miller

compared the language of 5 U.S.C. § 8116(c) with 42 U.S.C. §

2000e-5(g).  It noted the FECA's reference to "damages

. . . because of injury."  Title VII, however, does not refer

to "damages" but "equitable relief," and Title VII remedies

have generally been viewed as equitable make-whole relief to

redress discrimination.  Id. at 663.

    Moreover, the legislative history of § 8116(c) confirms

that FECA was intended to only be a substitute for suits

against the United States for tortious injury as authorized by

statutes similar to the Federal Tort Claims Act.  As FECA's

exclusivity clause was enacted in 1946, and Title VII was

enacted in 1964, there is no reference in FECA's legislative

history to the effect of the exclusivity on claims under Title

VII in particular, or suits from relief from discrimination in

gerneral.  Id. at 663-664, citing, S.Rep. No. 836, 81st Cong.,

1st Sess.

    The Third Circuit in Miller found it significant that

nowhere in the legislative history of the Equal Employment

Opportunity Commission Act of 1972 which made Title VII

16

applicable to certain federal employees, is there any mention
of FECA recovery as precluding actions for discrimination.
Rather, the legislative history of the EEOC Act suggests the
extension of Title VII to certain federal employees was
intended to provide them the same benefits and protections
available in the private sector.  Thus, Congress did not
intend that recovery for tortious injury under FECA should not
preclude Title VII remedies for discrimination.  Id. at 664,
citing, H.R. Rep. No. 238, 92nd Cong. 2d Sess; See also, Reidy
v. Runyon, 971 F.Supp. 760 (E.D. N.Y. 1997)(Extends Miller
doctrine to cases involving disability discrimination in
violation of Rehabilitation Act.)

     Here, Plaintiff testified in her declaration that she did
apply for and receive FECA benefits, but she did not recover
her full salary benefits, as Defendant contents.  See Paakaula
decl. ¶¶ 3-5.

C.    **Plaintiff's Reprisal Claim**

     A prima facie case of retaliation under the
Rehabilitation Act requires a plaintiff to show: (1)
involvement in a protected activity, (2) an adverse employment
action and (3) a causal link between the two.  The plaintiff
must present evidence adequate to create an inference that an
employment decision was based on an illegal discriminatory

criterion. <u>See</u>, <u>Coons v. Sec'y of the United States Dep't of
the Treasury</u>, 383 F.3d 879 (9th Cir. 2004)(citations omitted).

Once the plaintiff establishes a prima facie case, the
employer has the burden to present legitimate reasons for the
adverse employment action.  If the employer carries that
burden, and the plaintiff demonstrates a genuine issue of
material fact as to whether the reason advanced by the
employer was a pretext, then the retaliation case proceeds
beyond the summary judgment stage. <u>Coons</u>, 383 F.3d at 887.

With respect to causation, the court in <u>Grazioli v.
Genuine Parts Co.</u>, 2005 U.S. Dist. LEXIS 37503 *, 97 Fair
Empl. Prac. Cas. (BNA) 323 (D. N.J. 2005) stated:

> Causation may be proven by circumstantial
> evidence sufficient to raise the inference
> that the protected activity was the likely
> reason for the adverse action.
> Specifically, evidence of temporal
> proximity between the protected activity
> and the adverse employment action may
> establish causation. Even in the absence of
> temporal proximity, causation may be
> established by a "pattern of antagonism"
> following the protected conduct.  However,
> these factors are not the exclusive indicia
> of causation. The proffered evidence,
> looked at as a whole, may suffice to raise
> the inference of causation, including
> evidence that the employer's explanation
> for the adverse action was pretextual.

<u>Id.</u> at *31(citations omitted)

Here, Plaintiff has established that she did participate in a protected activity when, in 1999, she made a complaint of sexual harassment against her immediate supervisor. Plaintiff sought the intervention of her Congressional delegation to press for investigation of her complaint. Robert Dods, assistant to U.S. Senator Daniel Inouye, contacted the Postal Service to inquire about the status of Plaintiff's complaint. The Postal Service responded acknowledging that the paperwork had been forwarded to Plaintiff to process the complaint; the Post Office response to Mr. Dod's inquiry has been submitted as Ex. "B" to Plaintiff's Separate and Concise Statement of Facts submitted concurrently with her opposition to Defendant's motion.

Defendant's motion rests upon Plaintiff's testimony that she did not have knowledge as to causality. At her deposition taken during the administrative portion of her case, Plaintiff testified that she did not know if those persons who assigned her to a position where she would encounter those coworkers who set off the symptoms of her PTSD were aware of her prior EEO action. Plaintiff testified that she did not know if Lloyd Nakata, who reassigned her, had knowledge and she testified that at the time of her deposition in 2003 she had no evidence.

However, Defendant's motion contains the declaration of Alen Ueno who states in ¶¶ 1 and 7 of his declaration that he was a member of the DRAC and was aware of Plaintiff's prior EEO action against her supervisors, Conant and De Ponte. Nakata testified that he, too, was a member of the DRAC and had been for some years (Ex. "A" at 10:2-23); as such there is a reasonable inference that he was aware of Plaintiff's prior EEO activity since Ueno's declaration make it clear that the issue was discussed at the DRAC. The issue, therefore, remains one of material fact and as such, the case is not amenable to summary judgment.

## III. CONCLUSION

Therefore, for the foregoing reasons, Plaintiff requests that this Court deny Defendant's Motion to Dismiss her Complaint and/or for Summary Judgment.

DATED:    Honolulu, Hawaii February 10, 2006.


CLAYTON C. IKEI
JERRY P.S. CHANG

Attorneys for Plaintiff
LORI L. PAAKAULA

20