IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| LORI L. PAAKAULA, | ) CIVIL NO. 04-00071 SPK LEK |
| Plaintiff, | ) DECLARATION OF LORI L. ) PAAKAULA |
| v. | ) |
| JOHN E. POTTER, in his official capacity as the Postmaster General of the United States Postal Service, | ) ) ) ) ) |
| Defendant. | ) |

## DECLARATION OF LORI L. PAAKAULA

I, LORI L. PAAKAULA, under penalty of perjury, affirm that the following is true and correct. Unless otherwise indicated, all statements made herein a based upon my personal knowledge and belief.

1. I am the Plaintiff in the above-entitled case. This declaration has been prepared with the assistance of my legal counsel and is made in opposition to Defendant's Motion to Dismiss Complaint and/or for Summary Judgment filed January 27, 2006.

2. In January 2004 I began working at Post Office facility in Sand Island after OWCP reconsidered my claim. I made the claim in 2002 when management reassigned me to a location that would have required me to work with persons who

set off my Posttraumatic Stress Disorder ("PTSD") symptoms. My psychiatrist provided documentation why I could not work in such a situation. I made an OWCP claim that had twice before been denied before it was finally approved in December 2003.

3.    The benefits that I eventually received from OWCP did not fully reimburse me for what I suffered. Under no circumstances have I been "made whole" by the compensation from OWCP.

4.    Even after the second review of my request for compensation was grated, I received only seventy-five percent of my lost wages. I still lost twenty-five percent of my wages during the periods when I was forced to take leave without pay because management refused to accommodate me. According to the OWCP records in my case I was compensated a total of $30,441.344. Since, I received only seventy-five percent, that means I was not paid $10,147.11 in wages which I would have earned had I been accommodated.

5.    The partial back pay which I did received furthermore did not reimburse me for losses to my retirement compensation. While I was forced to take leave without pay, I was not able to make contributions to my retirement plan. I have lost the benefits of those contributions.

6. Management's refusal to accommodate my mental disability and to follow the instructions from my medical care providers had a profound negative impact upon my health and my life.

7. Before the notification in June 2002 that I was to be placed back an environment where I had to encounter either the Laus or Brian Conant or Bob DePonte, I had been doing well. I was able to control my symptoms enough to function in my daily life and it had not been necessary for me to take medications or to see my psychologist for just over a year.

8. After I learned that I would be placed back in an environment where I was not able to function, yet alone work, I was no longer able to control my symptoms. I found myself crying, unable to concentrate and unable to breathe at times. I had a return of irritable bowel syndrome and found myself vomiting at times. I again found it difficult to leave my home. Because of the return of those symptoms, I found it necessary again to be treated by Dr. Steadman.

9. When I began treatment again, I was put back on medication to control the PTSD symptoms which were aggravated by the necessity to work with my stressors. The medication is not completely effective. It does not erase my symptoms or remove my disability, it simply helps to dull my symptoms to

the point where I can tolerate them. It also had side effects which prevent me from concentrating so that I have to plan my life around my medication schedule. I have to rest after I've taken it because that's all I can do. I find myself stuck in a situation where I have to take medication to control the symptoms of my PTSD to function, but then taking the medication means I can't concentrate so I can't do anything anyway.

10. I also had to burden my family with accompanying me out of the house so that I could get medical treatment and do ordinary tasks.

11. I also had to rely up my parents for financial support since I was forced to take leave without pay in order to avoid being placed in a situation where I would encounter other Post Office employees who would set off my disorder.

12. Despite the financial assistance during the period I was forced to take leave without pay and had no income, I ended up selling one of my homes. The seventy percent of my wages which were eventually reimbursed to me did not provide enough income for me to keep both houses.

13. The compensation from OWCP in no way compensated me for the suffering I went through in order to be able to work in a safe environment within the limitations of my disability.

The OWCP claim provided a partial payment of wages and payment of medical bills; that was all.

14. In 1999, I made an EEO complaint against Brian Conant alleging sexual harassment after he requested me to lift up my hair while I was working. The investigation of the incident triggered my PTSD symptoms when Mr. Conant threatened physically to remove my union representative from a meeting. I contacted United States Senator Daniel Inouye's office to assist me after the incident. The Post Office acknowledged to Sen. Inouye's office that I had made the EEO complaint.

15. Exhibit "B" attached hereto is a true and correct copy of a letter dated December 6, 1999 to Mr. Robert D. Dods, Staff Assistant to Sen. Inouye acknowledging that EEO forms had been sent out to me.

DATED: Honolulu, Hawaii, February 9, 2006.

_____
LORI L. PAAKAULA