EDWARD H. KUBO, JR.   2499
United States Attorney
District of Hawaii

RACHEL S. MORIYAMA   3802
Assistant U.S. Attorney
Room 6-100, PJKK Federal Building
300 Ala Moana Boulevard
Honolulu, Hawaii 96850
Telephone: (808) 541-2850
Facsimile: (808) 541-3752
E-mail: Rachel.Moriyama@usdoj.gov

Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| LORI L. PAAKAULA, | ) | CIVIL NO. 04-00071 SPK-LEK |
| | ) | |
| Plaintiff, | ) | DEFENDANT'S REPLY TO |
| | ) | PLAINTIFF'S MEMORANDUM IN |
| vs. | ) | OPPOSITION TO DEFENDANT'S |
| | ) | MOTION TO DISMISS COMPLAINT |
| JOHN E. POTTER, in his | ) | AND/OR FOR SUMMARY JUDGMENT; |
| official capacity as the | ) | SECOND DECLARATION OF ALAN Y. |
| Postmaster General of the | ) | UENO; CERTIFICATE OF SERVICE |
| United States Postal Service, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

DEFENDANT'S REPLY TO PLAINTIFF'S MEMORANDUM
IN OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS COMPLAINT AND/OR FOR SUMMARY JUDGMENT

Plaintiff argues that the exclusivity provision of the

Federal Employees Compensation Act ("FECA") should not bar her

disability discrimination case because her discrimination

complaint is not based on an "injury" as defined by FECA, and

thus, is outside the scope of FECA.  See Plaintiff's Opposition

at 10-13.  The Court must reject Plaintiff's arguments because

she misstates and misapplies the test for determining the scope

of FECA's coverage.

I.   ARGUMENT

      A.    Plaintiff's Discrimination Claims Must Be
            Barred As They Fall Within The Scope Of
            <u>FECA's Coverage.</u>

As noted by the Supreme Court, Congress amended FECA in 1949 to add the exclusive liability provision, which currently is codified at 5 U.S.C. § 8116, "to protect the United States from suits under statutes, such as the Federal Tort Claims Act, that had been enacted to waive the Government's sovereign immunity." See <u>Lockheed Aircraft Corp. v. United States</u>, 460 U.S. 190, 193-94 (1983).  In <u>Lockheed</u>, the Supreme Court declared:

> In enacting [the FECA exclusivity] provision,
> Congress adopted the principal compromise --
> the "quid pro quo" --  commonly found in
> workers' compensation legislation:  <u>employees
> are guaranteed the right to receive immedi-
> ate, fixed benefits, regardless of fault and
> without need for litigation, but in return
> they lose the right to sue the Government.</u>

460 U.S. at 193-94 (emphasis added)(citations omitted).  Under § 8116, the United States' liability under FECA is exclusive and in lieu of all other liability for a covered injury or death:

> (a)  <u>While an employee is receiving compen-
> sation under this subchapter</u>, or if he has
> been paid a lump sum in commutation of
> installment payments until the expiration of
> the period during which the installment
> payments would have continued, <u>he may not
> receive salary, pay, or remuneration of any
> type from the United States</u>, except --
>
>     (1)  in return for service actually
>         performed.

\*   \*   \*   \*   \*

> (c) <u>The liability of the United States or an instrumentality</u> thereof ... <u>with respect to the injury or death of an employee is exclusive and instead of all other liability</u> of the United States or the instrumentality to the employee, ... and any other person otherwise entitled to recover damages from the United States or the instrumentality <u>because of the injury or death in a direct judicial proceeding</u>, in a <u>civil action</u>, or in admiralty, <u>or by an administrative or judicial proceeding under a workmen's compensation statute or under a Federal tort liability statute</u>. ...

(Emphasis added). Based upon §§ 8116(a) and (c), this Court must dismiss Plaintiff's complaint because there is no dispute that she has already received FECA benefits for the same post-traumatic stress disorder ("PTSD") injuries that underlie her Rehabilitation Act claims.

Once it has been determined that an injury is within the scope of FECA's coverage, FECA's remedy is exclusive and an employee cannot bring any other claims of suits for compensation against the government. <u>See</u> 5 U.S.C. § 8116; <u>Lockheed</u>, 460 U.S. at 194. The statutory test for FECA coverage is whether the employee was injured "while in the performance of his duty." 5 U.S.C. § 8102(a). <u>See also Reep v. United States</u>, 557 F.2d 204, 207 (9th Cir. 1977).

Plaintiff cites several cases, including <u>Nichols v. Frank</u>, 42 F.3d 503 (9th Cir. 1994); <u>Miller v. Bolger</u>, 802 F.2d 660 (3d Cir. 1986); <u>Morris v. Roche</u>, 182 F.Supp.2d 1260 (M.D.

Georgia 2002); <u>Dubee v. Henderson</u>, 56 F.Supp.2d 430 (D. Vt.

1999); <u>Reidy v. Runyon</u>, 971 F.Supp. 760 (E.D.N.Y. 1997), for the

proposition that her recovery under FECA is not a bar to further

recovery for acts of discrimination under the Rehabilitation Act.

<u>See</u> Opposition at 7-17.  These cases, however, are factually

distinguishable from the case at bar because they involve acts of

discrimination that are unrelated to a covered on-the-job injury,

and thus, clearly are outside the scope of FECA's coverage.

    For example, several of the cases cited by Plaintiff

involve Title VII sex and race discrimination cases that have no

facts involving work-place injuries or death.[1]  Even the

Rehabilitation Act cases cited by Plaintiff are factually

---

    [1]  For example, the <u>Nichols</u> case was a sex discrimination
action in which Nichols was sexually harassed by her night-shift
supervisor and, as a result, repeatedly but unwillingly performed
oral sex on him for a period spanning approximately six months.
42 F.3d at 506-07.  In rejecting the USPS' argument that Nichols
was barred by 5 U.S.C. § 8116(c) from recovering any payments to
compensate her for the sexual harassment in addition to the FECA
benefits that she had already received, the Ninth Circuit held
that the intentional <u>quid</u> <u>pro</u> <u>quo</u> sexual harassment was not an
on-the-job injury covered by FECA, and that consequently,
Nichol's sexual harassment claim was not barred by FECA's
exclusivity provisions.  <u>Id</u>. at 515.  In <u>Miller</u>, plaintiff, a
white male, alleged race discrimination in the form of physical
retaliation for having voluntarily testified on behalf of a black
co-worker, and further alleged that his on-the-job injuries were
the result of retaliation.  802 F.2d at 661.  Proving a
disability, or even a work-related injury, was not an element of
Miller's race discrimination case.  <u>Dubee</u> involved claims of
retaliatory sexual harassment that were subsequent to, and
independent of, the work-related PTSD claims for which plaintiff
received FECA benefits, <u>see</u> 56 F.Supp.2d at 431-32, and thus, her
retaliatory sexual harassment claims were not barred because they
were outside the scope of FECA's coverage.  <u>Id</u>. at 432-34.

distinguishable.  Morris involved an Air Force auditor who

claimed he was illegally terminated on the grounds of a

disability caused by a work-related injury to his right knee.

The court held that FECA's exclusivity provision did not bar

Morris' disability discrimination claims because the alleged acts

of intentional discrimination fell outside the scope of FECA's

coverage.[2]  The Morris court's analysis begs the question since

§ 8116 only bars claims for damages that arise out of the same

work-related injury or illness covered by FECA, see § 8102(a)

(United States shall pay compensation as specified by this

subchapter for the disability or death of an employee resulting

form personal injury sustained while in the performance of his

duty . . ."); any claim for damages based on something other than

a work-related injury or illness, by definition, is outside the

scope of FECA's coverage and is not barred by § 8116.[3]

---

[2]  The Morris court attempted to circumscribe the reach of
FECA's exclusivity provision by looking to FECA's definition of
"injury".  182 F.Supp.2d at 1272-79.  The Morris court first
cited FECA's definition of the term, "injury" under 5 U.S.C. §
8101(5)(defining "injury" as "injury by accident, a disease
proximately caused by the employment,. . .").  The Morris court
declared that "disparate treatment discrimination cannot, as a
matter of law, fit within FECA's definition of "injury" because
such discrimination is an intentional -- not accidental -- act,
is not a disease,...," and held that disability discrimination is
not an injury within the meaning of FECA.  182 F.Supp.2d at 1275
(footnote omitted) (emphasis added).

[3]  Reidy is similarly distinguishable on its facts.  There,
plaintiff sustained a work-related neck injury in 1986 and
received FECA benefits based on that injury.  971 F.Supp. at 762.
Because of his neck injury, Reidy was placed on "limited duty,"

In the instant case, Plaintiff's FECA claim, which was designated as OWCP Claim No. 132063616 (hereinafter referred to "FECA Claim #3), and her subject Rehabilitation Act claims are both based upon her allegation that she was injured by the USPS' attempt in June 2002 to reassign Plaintiff to a work shift and pay location that might have exposed her to USPS employees, Rodney or Anna Lau, and trigger a flare-up of her post-traumatic stress disorder ("PTSD"), a disease that had been "proximately caused" by her employment when, in 1993, she witnessed a work place altercation involving the Laus.  See § 8101(5)(defining the term "injury").  As Plaintiff's disability discrimination claims are based on an "injury" -- i.e., her PTSD, which is a "disease proximately caused by the employment," see § 8101(5) -- and she sustained that injury "while in the performance of [her] duty," see § 8102(a), Plaintiff's discrimination claims fall squarely within the scope of FECA's coverage and must be dismissed pursuant to FECA's exclusivity provision.

---

in which some of his job duties were restricted. Id.  In February 1995, Reidy filed a Rehabilitation Act lawsuit alleging that between November 11, 1991 and April 13, 1993, he had been denied work on overtime shifts despite his seniority and request for these assignments. Id.  The court's finding that Reidy's overtime discrimination claims were not barred by FECA fits squarely within § 8102(a)'s practical test for FECA coverage. Reidy's disability discrimination claim was based upon his allegations that he was improperly denied overtime assignments, and thus, was not subject to FECA's exclusivity bar because the denial of overtime assignments did not constitute an injury covered by FECA.

    B.    FECA's Exclusivity Provision Is Not Limited
          To Barring Only Tort Claims.

        Plaintiff cites Morris, 182 F.Supp.2d at 1275-76, for

the questionable legal proposition that FECA cannot bar any

discrimination claims because the legislative history of § 8116

indicated that Congress was only concerned with the high cost of

defending tort litigation.[4]  See Plaintiff's Opposition at 7-17.

This Court should decline to adopt the tortured reasoning in

Morris in favor of the authority cited below.  Despite its

acknowledgment that the Rehabilitation Act and other federal

anti-discrimination statutes did not even exist at the time that

§ 8116(c) was enacted in 1949, the Morris court nonetheless

considered it significant that the legislative history of both

the Rehabilitation Act and the Rehabilitation, Comprehensive

Services, and Developmental Disabilities Amendments of 1978

(which created a private cause of action against the federal

---

    [4]  The Morris court's reliance upon § 8116's legislative
history is puzzling since the statute is not ambiguous, and the
plain language of § 8116(c) appears to expressly preclude more
than just tort claims.  § 8116(c) provides the exclusive remedy
for all damages caused by injury or death in "a direct judicial
proceeding, in a civil action, or in admiralty, or by an admini-
trative or judicial proceeding under a workmen's compensation
statute or under a Federal tort liability statute..." (emphasis
added).  The references to a workmen's compensation statute or a
federal tort statute only modify "an administrative or judicial
proceeding," and do not modify "a direct judicial proceeding" or
"a civil action."  By drafting § 8116(c) is this manner, Congress
demonstrated its intent to bar more than just tort claims, and to
make FECA the exclusive mechanism for federal employees to
recover damages for a covered work-related injury or death.

government under § 501) did not contain any expression by

Congress that it intended actions under § 501 to be barred by a

recovery of FECA benefits.  182 F.Supp.2d at 1277.  The <u>Morris</u>

court even attempted to construe Congress' silence as affirmative

confirmation of its interpretation: "The absence of any such

indication confirms the Court's conclusion that Congress did not

intend for recovery under FECA to preclude § 501 remedies for

disability discrimination."  <u>Id</u>. (citation omitted).

The <u>Morris</u> court also attempted to justify its

conclusion by noting that the "dissimilarity of relief available

under FECA and § 501 means that a federal employee who recovers

FECA benefits will not be fully compensated for any disability

discrimination he suffers subsequent to his work-related injury

unless he can also bring a claim under the Rehabilitation Act."

<u>Id</u>.  This argument is unworkable[5] and ignores the fundamental

quid pro quo that the Supreme Court stated was the core principle

of FECA.  <u>Lockheed</u>, 460 U.S. at 193-94.

As noted above, and in the United States' initial

Memorandum in Support at 11-14, courts must dismiss employment

---

[5]  The fact that the anti-discrimination statutes provide
remedies and monetary recoveries different from those available
under FECA is not dispositive.  The FTCA provides remedies
different and recoveries different from FECA.  And the fact that
a tort victim may not being fully compensated by an award of FECA
benefits does not change the fact that Congress expressly
intended FECA to provide the exclusive remedy for all damages
claims based on covered work-related injuries or death.

discrimination suits, pursuant to FECA's exclusivity provisions,
when they determine that the discrimination cases arise out of
the same on-the-job injuries for which FECA benefits have been
sought or awarded. § 8116.[6]  Here, there is no question that the
same alleged work-related mental disability (the PTSD and panic
disorder caused or exacerbated by the USPS' attempt to reassign
Plaintiff in June 2002) is the basis for <u>both</u> this employment
discrimination case and Plaintiff's FECA Claim #3.

      The Ninth Circuit's <u>Nichols</u> case, cited by Plaintiff,
is instructive in describing those types of discrimination claims
that are clearly outside the scope of FECA and those that should
be barred by § 8116(c) because they are within the scope of
FECA's coverage.  In describing the scope of FECA's coverage, the
Ninth Circuit noted:

> . . . Because the district court's award
> compensated Nichols solely for the harm she
> suffered from sex discrimination -- which is
> not an "injury" within the meaning of FECA --
> the exclusivity provisions are not applicable
> to [prohibit that award based on the sex
> discrimination].
>
> FECA's exclusivity provisions apply only
> to additional payments for work-related

---

[6]  <u>See</u>, <u>e.g.</u>, <u>Stubler v. Runyon</u>, 892 F. Supp. 228, 229-30
(W.D. Mo. 1994)(USPS employee barred from recovering additional
damages under Rehabilitation Act for same physical condition
(carpal tunnel syndrome) for which she received FECA benefits),
<u>aff'd</u>, 56 F.3d 69 (8th Cir. 1995); <u>Alexander v. Frank</u>, 777 F.
Supp. 516, 523-24 (N.D. Tex. 1991)(§ 8116(a) barred plaintiff's
claims under Rehabilitation Act to recover back pay in addition
to FECA benefits paid for same on-the-job back injury).

> injuries.  <u>For example, Nichols' post-</u>
> <u>traumatic stress disorder [which resulted</u>
> <u>from the sexual harassment] is clearly an</u>
> <u>injury as defined by the act because it is a</u>
> <u>"disease proximately caused by employment."</u>
> Accordingly, under FECA's exclusivity provi-
> sion, Nichols is barred from recovery any
> other sums from the United States relating to
> her post-traumatic stress disorder.

<u>Id</u>. (emphasis added).  The instant case does not involve a

discrimination claim based on intentional harassment or

discrimination similar to the quid pro quo sexual harassment

alleged in <u>Nichols</u>.  Instead, Plaintiff's alleged discrimination

claim is based on the same mental disability (PTSD and panic

disorder) for which she has already received full FECA benefits,

and thus, it is analogous to Nichols' PTSD claims which the Ninth

Circuit held were barred as involving the same work-related

injury covered by FECA.  Although Plaintiff purports to be

asserting a disability discrimination claim, in reality, she is

seeking to recover additional damages based on the flare-up of

her work-related PTSD that was caused by the USPS' 2002 attempt

to reassign her to work shift and job location that might have

exposed her to contact with the Laus.  Plaintiff has already been

fully compensated for these work-place injuries pursuant to her

FECA Claim #3.  Accordingly, the Court must disregard Plaintiff's

efforts to re-cast her work-place injuries as acts of discrimi-

nation, bar her from recovering any damages in addition to the

FECA benefits that she has already received in light of

§§ 8116(a) and (c), and dismiss the complaint with prejudice.

    C.    <u>This Case Must Be Dismissed As Moot.</u>

Plaintiff does not dispute that as a result of OWCP's acceptance of her FECA Claim #3, she has been awarded workers' compensation benefits, including back pay, medical treatment and a full-time rehabilitation position that she has held since January 2004. <u>See</u> Plaintiff's Concise Statement[7] and the attached Second Declaration of Alan Y. Ueno (hereinafter the "Second Ueno Declaration") at ¶ 8. In an effort to rebut Defendant's mootness defense,[8] Plaintiff argues that she is entitled to additional damages for back pay because she only received 75% of her salary under FECA, and under the Rehabilitation Act, she could recover 100% of back pay, <u>see</u> Plaintiff's Opposition at 12, Concise Statement at ¶ 7 and

---

[7] Plaintiff admitted ¶ 5 of Defendant's Concise Statement, which alleged that Plaintiff had "received full workers compensation benefits for her claimed work-related mental disability (PTSD and panic disorder) arising out of the USPS' proposal to reassign her in June 2002."

[8] In her Concise Statement and declaration, Plaintiff also argued that (1) she "lost the benefit of contributions to her retirement plan while she was forced to take leave without pay," <u>see</u> Plaintiff's Concise Statement at ¶ 10 and Paakaula Declaration at ¶ 5; (2) she was forced to sell one of her homes during the time she was on leave without pay, <u>see</u> Plaintiff's Concise Statement at ¶ 11 and Paakaula Declaration at ¶ 12; and (3) as a result of the alleged discrimination, she suffered from the recurrence of her PTSD and had to take medication, <u>see</u> Plaintiff's Concise Statement at ¶s 12-14 and Paakaula Declaration at ¶s 7-9.

Declaration of Lori Paakaula (hereinafter the "Paakaula

Declaration") at ¶ 4.  Plaintiff's argument regarding back pay is

without merit for several reasons.  First, FECA expressly

provides that an employee may not receive any other remuneration

from the United States while she is receiving workers' compen-

sation.  See 5 U.S.C. § 8116(a).  In accepting Plaintiff's FECA

Claim #3, the Secretary of Labor made a judicially non-reviewable

decision[9] that the flare-up of Plaintiff's PTSD caused by the

USPS' attempt to reassign her in June 2002 was a work-related

injury that qualified her to receive an award of workers'

compensation benefits.  Accordingly, those FECA benefits

constitute the government's exclusive liability to her, and by

operation of § 8116(a), Plaintiff cannot receive any additional

compensation for the period covered by FECA Claim #3.

Even in the absence of § 8116(a)'s plain language, the

Court should reject Plaintiff's argument that she is entitled to

receive 100% of her back pay because she has failed to account

for the fact that all workers' compensation payments are

statutorily tax-free, see 26 U.S.C. § 104(a); the Second Ueno

Declaration at ¶ 9(b), while ordinary salary payments would be

subject to tax.  Plaintiff's demand that she be paid 100% of her

---

[9]   5 U.S.C. § 8128(b) provides that the Secretary's
decisions to allow or deny worker's compensation payments are
final and conclusive, and are "not subject to review by another
official of the United States or by a court."

back pay, <u>tax-free</u>, is wholly unreasonable and without legal support, and thus, the Court should find that she is not entitled to any additional payments for back pay.

This Court must reject Plaintiff's remaining allegations of uncompensated losses because those claims are the very type of damages that are meant to be covered by FECA. Moreover, the USPS had no control over the OWCP's decision whether or not to accept Plaintiff's FECA Claim #3, and thus, the USPS cannot be held liable for losses that Plaintiff suffered as a result of the OWCP's delay in accepting her FECA Claim #3. Finally, Plaintiff's allegations amply demonstrate that, despite her attempts to characterize this lawsuit as a disability discrimination case, she is really seeking to recover tort damages in addition to the FECA benefits that she has already received for her work-place injury. As Plaintiff has received reinstatement (and therefore has no claim for front pay) and back pay through FECA, the Court must dismiss her Rehabilitation Act complaint as moot.

D.   Plaintiff Has Failed To State A Claim For
     <u>Retaliation.</u>

As noted in Defendant's original moving papers, <u>see</u> Defendant's Memorandum in Support at 16-18, Plaintiff cannot establish a <u>prima</u> <u>facie</u> case for retaliation because she failed to present any evidence to prove that the USPS' June 2002 proposal to reassign her was based on an illegal discriminatory

motive.  See <u>O'Connor v. Consolidated Coin Caterers Corp.</u>, 517

U.S. 308, 312 (1996)(requiring "evidence adequate to create an

inference that an employment decision was based on a[n illegal]

discriminatory criterion.").  Here, the alleged adverse action

(the reduction in Plaintiff's work hours on September 18, 2000)

occurred <u>prior</u> to her engagement in the protected activity

(Plaintiff's first requested EEOC counseling in connection with

the June 2002 reassignment proposal on September 19, 2000).  In

addition, Plaintiff admitted at deposition that she had no

evidence that any of the USPS supervisors involved in the June

2002 attempted reassignment were even aware that she had filed

any EEO action.[10]

        In a desperate effort to manufacture evidence of a

causal link, Plaintiff falsely stated that Alan Ueno admitted in

his first declaration at ¶ 7 that he and members of the DRAC were

aware of Plaintiff's EEO complaint filed against Brian Conant and

Robert DePonte, and that therefore, there was a "reasonable

inference" that Plaintiff's prior EEO activity was discussed by

the DRAC.  <u>See</u> Plaintiff's Opposition at 20.  Paragraph 7 of the

first Ueno declaration[11] actually described Plaintiff's filing of

---

[10]   <u>See</u> excerpts of the Deposition of Lori Paakaula
(attached as Exhibit "E" to the Declaration of Rachel S. Moriyama
in support of Defendant's Motion to Dismiss) at 112:9-24.

[11]   The first Ueno Declaration was attached in support of
the Defendant's Motion to Dismiss Complaint and/or For Summary
Judgment filed herein on January 27, 2006.

a <u>FECA</u> claim (FECA Claim #2) involving the alleged harassment by

two of Plaintiff's supervisors, and did not mention any EEO

activity.  <u>See</u> the Second Ueno Declaration at ¶ 10.  In fact, Mr.

Ueno denies that he was aware of any prior EEO activity by

Plaintiff and affirmatively states that an employee's EEO

activity is never disclosed or discussed as part of the DRAC's

proceedings.  <u>See</u> the Second Ueno Declaration at ¶ 11.  In light

of Plaintiff's flagrant misstatement of the facts, she has failed

to establish the causal connection element required to satisfy

her burden to prove retaliation.  Accordingly, this Court must

dismiss Plaintiff's retaliation claim for failure to state a

claim and/or enter summary judgment in favor of the Defendant.

II.   <u>CONCLUSION</u>

       For the foregoing reasons, Defendant urges the Court to

dismiss the complaint and/or to enter summary judgment in favor

of Defendant on all claims asserted by Plaintiff.

              DATED:  March 24, 2006, at Honolulu, Hawaii.

                              EDWARD H. KUBO, JR.
                              United States Attorney
                              District of Hawaii

                              /s/ Rachel S. Moriyama

                              By_____
                                RACHEL S. MORIYAMA
                                Assistant U.S. Attorney

                              Attorneys for Defendant
                              JOHN E. POTTER

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| LORI L. PAAKAULA, | ) | CIVIL NO. 04-00071 SPK-LEK |
| | ) | |
| Plaintiff, | ) | CERTIFICATE OF SERVICE |
| | ) | |
| vs. | ) | |
| | ) | |
| JOHN E. POTTER, in his | ) | |
| official capacity as the | ) | |
| Postmaster General of the | ) | |
| United States Postal Service, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on the date and by the methods of service noted below, a true and correct copy of the foregoing was served on the following at their last known addresses:

Served Electronically through CM/ECF:

Clayton C. Ikei    CCIOffice@hawaii.rr.com
March 24, 2006

Served by First Class Mail:

Jerry P.S. Chang              March 24, 2006
1440 Kapiolani Boulevard, Suite 1203
Honolulu, Hawaii 96814

DATED:  March 24, 2006, at Honolulu, Hawaii.

/s/ Jan Yoneda

_____