IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| LORI L. PAAKAULA, | ) | CIVIL NO. 04-00071 SPK-LEK |
| | ) | |
| Plaintiff, | ) | SECOND DECLARATION OF ALAN |
| | ) | UENO |
| vs. | ) | |
| | ) | |
| JOHN E. POTTER, in his official capacity as the Postmaster General of the United States Postal Service, | ) ) ) ) | |
| | ) | |
| Defendant. | ) | |

SECOND DECLARATION OF ALAN Y. UENO

I, ALAN Y. UENO, declare that:

1. I am the Manager, Injury Compensation, for the Honolulu District, United States Postal Service ("USPS"). I have been employed by the USPS since May 1978, and have worked in Injury Compensation since 1985. As the Manager, Injury Compensation, I am responsible for administering the USPS' injury compensation program for the Honolulu District. In this capacity, I process all injury claims, provide technical advice to management and the crafts/unions regarding workers compensations matters, communicate with physicians, and act as the USPS' liaison to the Office of Workers Compensation Program ("OWCP"), United States Department of Labor ("USDOL"). As Manager, Injury Compensation, I have served as a member of the

USPS' District Reasonable Accommodation Committee (DRAC) at all times relevant to this case.

2. I am authorized to make this declaration and I have personal knowledge of the facts alleged herein.

3. I have reviewed the Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss Complaint and/or For Summary Judgment filed in this case.

4. Ms. Paakaula filed two workers' compensation injury claims under the Federal Employees Compensation Act ("FECA") based on the same mental disability -- i.e., the post-traumatic stress disorder ("PTSD") and panic disorder -- which she claims was initially caused when she witnessed a workplace fight involving USPS employees Rodney Lau, his wife, Anna Lau, and another USPS employee on July 17, 1993. As a result of witnessing this workplace altercation, Ms. Paakaula claimed that she developed PTSD, which would be triggered or exacerbated whenever she came into contact with either of the Laus.

5. Ms. Paakaula filed a workers' compensation claim under FECA based on her PTSD, which was designated as Office of Workers Compensation Program ("OWCP") Claim No. 131021396 (hereinafter "FECA Claim #1"). The OWCP initially denied FECA Claim #1 on October 13, 1993. That denial was overturned on appeal, and on September 9, 1994, Ms. Paakaula's FECA Claim #1

2

was accepted. As a result, she was awarded full workers compensation benefits. The USPS adjusted all of sick leave, annual leave, and leave without pay ("LWOP") that was charged against Plaintiff, for the period from July 21, 1993 through August 30, 1993, to continuation of pay ("COP"). Plaintiff returned to work on August 31, 1993.

6.  Based upon on her allegations of stress caused by the USPS' proposal to reassign her in June 2002, Ms. Paakaula filed another FECA Claim in October 2002, which was designated as OWCP Claim No. 132063616 (hereinafter "FECA Claim #3).

7.  In December 2003, the OWCP accepted Ms. Paakaula's FECA Claim #3 based on the diagnosed condition of panic disorder. As a result of OWCP's acceptance of Ms. Paakaula's FECA Claim #3, and based on her medical restriction that she have no contact with four USPS employees (the Laus, Brian Conant and Robert DePonte) who worked at the Honolulu Processing and Distribution Center near the Honolulu International Airport, the USPS offered Ms. Paakaula a position under the Joint USDOL/USPS Rehabilitation Program as a full-time distribution clerk at the Sand Island Station on January 9, 2004.

8.  Ms. Paakaula accepted the Sand Island Station position on January 19, 2004, and reported to work on January 24,

2004. Since then and up to the present time, Plaintiff has worked full-time in that position.

   9. As a result of the OWCP's decision to accept her FECA Claim #3, Ms. Paakaula has received full workers compensation benefits for her mental disability (panic disorder) claim that arose out of the USPS' proposal to reassign her in June 2002. Ms. Paakaula has been "made whole" in that she has received the following benefits:

   (a) Ms. Paakaula received FECA compensation for all lost wages during the entire period that her incapacitation was medically supported as resulting from her work-related illness, including the period(s) from September 5, 2002, to January 23, 2004. Plaintiff also received a total of twenty-eight (28) hours of compensation for fourteen (14) medical appointments during the period from February 10, 2004, through June 29, 2004.

   (b) In accordance with applicable law, the FECA workers' compensation payments made to Ms. Paakaula by OWCP were tax-free.

   (c) Medical treatment for Ms. Paakaula's accepted mental condition has been, and continues to be, covered at no cost to her.

   (d) The USPS accommodated her disability and medical restrictions by offering her the Joint USDOL/USPS Rehabilitation

Program position at the Sand Island Station, away from the four restricted USPS employees.

      10.  With regard to Ms. Paakaula's retaliation claim, I did not state in my earlier declaration filed in this case that I or any other members of the DRAC were aware of any Equal Employment Opportunity ("EEO") activity filed by Ms. Paakaula. Paragraph 7 of my previous declaration described Ms. Paakaula's second FECA claim (OWCP Claim No. 131202433), and not any EEO complaint or activity. As noted in my previous declaration, Plaintiff's FECA Claim #2 involved allegations that her PTSD was exacerbated in 1999 when she was allegedly harassed by her then-immediate supervisor, Brian Conant, and manager, Robert DePonte. The OWCP denied Ms. Paakaula's FECA Claim #2.

      11.  Based upon my experience as a member of the USPS's District Reasonable Accommodation Committee (DRAC) and my understanding of its procedures, an employee's EEO activity is never disclosed or discussed as part of the DRAC's proceedings. The purpose of the DRAC is to determine if an employee claiming a physical or mental disability qualifies for a reasonable accommodation and, if the employee is determined to be qualified, whether a reasonable accommodation exists and is available. Therefore, whether or not a requesting employee engaged in any

5

EEO activity would not be relevant to the DRAC or its decision-making process.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 24, 2006, at Honolulu, Hawaii.

                                              *[signature]*
                                          ALAN Y. UENO