# EXHIBIT "A"

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

PATRICIA O'CONNELL,           )    CIVIL NO. 04-00178 HG-BMK
                              )
            Plaintiff,        )
                              )
    vs.                       )
                              )
JOHN E. POTTER, POSTMASTER    )
GENERAL, UNITED STATES POSTAL )
SERVICE; UNITED STATES POSTAL )
SERVICE,                      )
                              )
            Defendants.       )
_____)

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS COMPLAINT AND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff brings an action claiming unlawful employment discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e *et seq.*, and Section 501 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. Section 791 *et seq.*, 42 U.S.C. § 1981a; and under the laws of the State of Hawaii.

Plaintiff Patricia O'Connell alleges that the Defendant, the United States Postal Service, discriminated against her on the bases of race (Filipino), sex (female), and physical and mental disability.

Plaintiff alleges that as a direct and proximate result of the intentional discriminatory acts, including retaliation by Defendant, the Plaintiff has suffered and continues to suffer injury. She alleges past and future loss of income and other employment benefits, severe emotional pain and suffering, mental


EXHIBIT "A"

anguish, humiliation, loss of enjoyment of life, embarrassment, damage to her reputation and other past and future pecuniary losses.

Defendant, United States Postal Service, moves for an order dismissing the Complaint and/or granting summary judgment in favor of Defendant.

For the reasons set forth below, the Court GRANTS the Defendant's Motion to Dismiss and Motion for Summary Judgment.

## FACTUAL SUMMARY

Plaintiff Patricia O'Connell was employed as a mail carrier at the Kapalama Post Office. (Declaration of Patricia O'Connell dated 9/8/05 "O'Connell Decl." at ¶ 2.) On June 26, 1997, Plaintiff fell and injured herself while delivering mail. (Declaration of Alan Y. Ueno dated 7/19/05 "Ueno Decl." at ¶ 3). She was diagnosed with a sprained left foot and lumbosacral sprain. (Id.) The Department of Labor, through the Department of Labor, Office of Workers' Compensation Programs, initially accepted Plaintiff's injuries as job-related and awarded her workers' compensation benefits under the Federal Employees Compensation Act. (Id. at ¶ 3.)

As a result of the on-the-job injury, Plaintiff was unable to perform her full carrier duties and was classified as a "limited duty" employee. (Id. at ¶¶ 5-6.) Plaintiff could not walk, stand, lift, bend or twist for prolonged periods of time.

2

(<u>Id.</u> at ¶ 6.)  This resulted in her receiving limited duty tasks consisting of answering the telephones, typing and other sedentary office assignments.  (<u>Id.</u>)  Plaintiff had difficulties performing these limited duty assignments and, on or about July 27, 1998, Plaintiff presented a medical certificate from her then treating physician, Dr. Elva G. Pearson.  (<u>Id.</u>)  The medical certificate stated that Plaintiff was totally incapacitated and could not work effective July 27, 1998.  (<u>Id.</u>)  Plaintiff filed a claim for compensation, Form CA-7, and the Office of Workers' Compensation Programs compensated her for total wage loss from July 29, 1998, until April 26, 1999.  (<u>Id.</u>)

The Office of Workers' Compensation Programs scheduled Plaintiff for a second opinion examination with Dr. Ramon Bagby on October 14, 1998.  (<u>Id.</u> at ¶ 7.)  The purpose of the examination was to determine whether Plaintiff still suffered residual effects from the accepted conditions caused by her June 26, 1997 injury.  (<u>Id.</u>)  Dr. Bagby's report, dated November 20, 1998, concluded that Plaintiff no longer suffered any residual effects from her on-the-job injury.  (<u>Id.</u>)  As a result, the Office of Workers' Compensation Programs issued a notice of proposed termination of compensation dated March 24, 1999.  (<u>Id.</u>)  After considering supplemental information submitted by Plaintiff, the Office of Workers' Compensation Programs issued an order terminating all compensation benefits on April 26, 1999,

3

finding that Plaintiff had recovered from her June 26, 1997

injury and no longer suffered any residual effects.  (Id.)

Plaintiff disagreed with the Office of Workers' Compensation

Programs' decision and requested an oral hearing on the merits,

which was subsequently held before an Office of Workers'

Compensation Programs hearing representative on April 25, 2000.

(Id. at ¶ 8.)

The United States Postal Service informed Plaintiff of her

right to request "light duty" once the Office of Workers'

Compensation Programs terminated Plaintiff's Federal Employees

Compensation Act benefits in April 1999.  (Id. at ¶ 9.)  Article

13 of the union agreement addresses "light duty," which can be

requested by an employee who is not capable of performing full

duty due to a non-job related condition.  (Id.)  Plaintiff had

strong reservations against signing and submitting a light duty

request because the form referred to an off-the-job condition.

(Id.)

The United States Postal Service decided to continue to

treat Plaintiff as if she were still in limited duty status

pending the outcome of her Federal Employees Compensation Act

appeal.   (Id. at ¶ 10.)  The United States Postal Service did

this in order to allow Plaintiff to continue working as well as

to limit the agency's exposure, in the event that her claim was

approved on appeal.  (Id.)

Following the hearing on the merits, the Office of Workers'
Compensation Programs hearing representative affirmed the April
26, 1999 order on July 24, 2000.  (Id. at ¶ 11.)  Plaintiff
continued to pursue her rights under the Federal Employees
Compensation Act.  (Id.)  In affirming the April 26, 1999
termination order, the hearings representative found that
Plaintiff no longer suffered any residual effects of her job-
related injury.  (Id. at ¶ 12.)

Plaintiff's supervisor was informed that the Office of
Workers' Compensation Programs had terminated Plaintiff's Federal
Employees Compensation Act benefits and that Plaintiff was no
longer entitled to limited duty status, since limited duty status
is provided only to those employees who suffered from job-related
injuries.  (Declaration of Colleen K. Larsen dated 7/19/05
"Larsen Decl." at ¶ 5, Ueno Decl. at ¶ 12.)  Plaintiff's
supervisor offered Plaintiff the option of submitting either a
request for permanent light duty under Article 13 of the National
Agreement or a request for Office of Personal Management
disability retirement benefits.  (Larsen Decl. at ¶ 5.)

In August 2000, Plaintiff requested permanent light duty and
submitted her medical restrictions.  (Larsen Decl. at ¶ 6.)
Plaintiff claims that her supervisor, Larsen, told her to change
her status from limited duty status to light duty status.
(O'Connell Decl. at ¶ 4.)

Defendant's Exhibit H lists the physical requirements of a city carrier.  A physical examination is required to show that the "Applicants are physically able to perform efficiently the duties of the position, which require arduous exertion involving prolonged standing, walking, and reaching, and may involve the handling of heavy sacks of mail."  (Def.'s Ex. H, Bargaining Unit Qualification Standard).  Plaintiff could not perform the essential functions of the carrier position; specifically, she could not perform the essential functions of casing and delivering mail.  Casing mail requires that a carrier "carry trays of mail that can weigh up to 20 pounds to his or her 'distribution case,' which is a large box outfitted with shelves."  (Declaration of Frank Santos dated 7/18/05 "Santos Decl." at ¶ 6(a).)  Delivery of mail requires that a carrier deliver mail along his or her route, as well as collect mail from street letter boxes and customers, as well as other physical duties; the estimated time spent performing these functions is five to six hours a day.  (Id. at ¶ 6(c).)  The medical restrictions that Plaintiff submitted stated that she could not lift, push, or pull over ten pounds, and she could not kneel, climb, squat, or stand or walk for prolonged periods.  (Def.'s Ex. B, Plaintiff's Work Status Evaluation Card.)

On September 18, 2000, Plaintiff was informed by her supervisor that her work hours were being reduced to one hour per

day because there was no available productive work that Plaintiff could perform within her medical restrictions.  (Larsen Decl. at ¶¶ 9-10.)  Plaintiff contends that she never would have changed her status from limited duty status to light duty status if she had known her hours would be drastically reduced.  (O'Connell Decl. at ¶ 4.)  On September 19, 2000, Plaintiff complained to her supervisor about the reduction in hours.  (Larsen Decl. at ¶ 11.)  At that time, three male employees of different races were allowed to work more than one hour per day on limited duty status.  (O'Connell Decl. at ¶ 9; see also Plf.'s Opp. to Def.'s Motion for Summ. J. at 7.)

On or about September 29, 2000, Plaintiff submitted a lettergram signed by Dr. Alan Buffenstein, in which he certified that Plaintiff was "suffering from physical pain, stress & depression & is currently unable to work."  (Ueno Decl. ¶ 13.) Thereafter, Dr. Buffenstein periodically provided medical certifications indicating that Plaintiff was totally incapacitated from performing her usual duties.  (Id.)

Plaintiff was advised of her right to submit an application for disability retirement benefits from the Office of Personnel Management.  (Id. at ¶ 14.)  She submitted an application for disability retirement benefits, which was approved by the Office of Personnel Management.  (Id.)  Her last day in pay status was November 12, 2002.  (Id.)

On October 8, 2003, the Office of Workers' Compensation
Programs issued a decision reversing its April 26, 1999 order
based on new medical evidence.  (See Def.'s Ex. A, Letter from
U.S. Dept. of Labor and Notice of Decision.)  The  Office of
Workers' Compensation Programs found that Plaintiff continued to
suffer residuals on the lumbosacral sprain that had been
previously accepted, and it expanded Plaintiff's accepted
conditions to include a consequential mental condition (chronic
pain syndrome and major depression).  (Id.)  Plaintiff was
awarded back pay for the previous four years, retroactive pay, as
well as a continuing monthly payment.  (Ueno Decl. at ¶ 16.)

Plaintiff now brings an action of unlawful discrimination.
Defendant moves to have the claims dismissed.

A basic relevant timeline is helpful:

**June 26, 1997**        Plaintiff is injured while delivering mail.
                         Plaintiff is subsequently classified as a
                         "limited duty" employee, as the injuries were
                         job related.  Plaintiff was awarded workers'
                         compensation benefits.

**July 27, 1998**        Plaintiff presented a medical certificate
                         stating that she was totally incapacitated
                         for work, effective July 27, 1998.  Plaintiff
                         filed a claim for compensation.

**July 29, 1998**        **Plaintiff was compensated for total wage loss
                         from July 29, 1998 through April 26, 1999.**

**October 14, 1998**     The Office of Workers' Compensation Programs
                         ("OWCP") scheduled Plaintiff for an
                         examination with a doctor to determine
                         whether Plaintiff still suffered residuals of
                         her on-the-job injuries.

8

**November 20, 1998**    The OWCP's doctor's report concluded that Plaintiff no longer suffered residuals from her on-the-job injury.

**March 24, 1999**    **The OWCP issued a notice of proposed termination of compensation.**

**April 26, 1999**    The OWCP issued an order terminating all compensation benefits, finding that Plaintiff had recovered from the injuries and no longer suffered residuals.

The OWCP informed Plaintiff of her right to request "light duty" once the OWCP terminated her benefits.  Article 13 of the union agreement addresses "light duty" status, which can be requested by an employee who is not capable of performing full duty due to a non-job related condition.  Plaintiff requested an oral hearing on the merits.

The United States Post Office, as a result of Plaintiff's appeal, elected to continue to treat Plaintiff as a "limited duty" status pending the outcome of the appeal.  "Limited duty" status is given to an employee who is not capable of performing full duty due to an on-the-job injury.

**April 25, 2000**    An OWCP hearing representative conducted a hearing in response to Plaintiff's appeal of the April 26, 1999 termination order.

**July 24, 2000**    **The OWCP hearing representative issued a decision affirming the April 26, 1999 order**, finding that Plaintiff no longer suffered residuals of her job-related injury.  Since limited duty status was only provided to those employees who suffered from job-related injuries, plaintiff was informed that she was no longer entitled to "limited duty" status. Plaintiff was given the option of either submitting a request for permanent light duty under the provisions of Article 13 of the National Agreement or submitting a request for disability retirement benefits from the Office of Personnel Management.

9

**August 2000**          Plaintiff requested "light duty" status and
                         submitted a list of the kind of work that she
                         thought she could do based on her physical
                         limitations disability.

**September 18, 2000**   Plaintiff's work hours were reduced to one
                         hour per day.  Plaintiff complained about the
                         reduction.  At this time there were three
                         males of different races who were on limited
                         duty status.  These three males' hours were
                         not reduced.

**September 19, 2000**   Plaintiff approached her supervisor, again
                         expressing dissatisfaction with the hour
                         reduction.  According to Defendant, Plaintiff
                         yelled at her supervisor, Larsen, and began
                         to cry and scream.  The police were called
                         and Plaintiff was taken to the emergency room
                         by ambulance.  Plaintiff did not return to
                         work after this date.

**September 29, 2000**   Plaintiff submitted a letter from her doctor,
                         stating that she was unable to work.

**December 9, 2000**     Plaintiff filed an Informal Complaint of
                         Discrimination, alleging discrimination of
                         race, sex, physical handicap and mental
                         handicap, and that she was treated
                         disparately when her light duty hours were
                         reduced.

**December 19, 2000**    Plaintiff filed a formal EEOC complaint.
                         Plaintiff did not assert a retaliation claim
                         and did not check the "reprisal" box.
                         Plaintiff also did not specify any prior
                         activity that could have given rise to any
                         retaliation.

**January 11, 2002**     **An EEOC administrative judge issued a
                         decision, finding no discrimination in favor
                         of the United States Postal Service.**

**September 24, 2003**   **The EEOC Office of Federal Operations
                         affirmed the administrative judge's decision,
                         finding no discrimination.**

10

October 8, 2003          **The OWCP issued a decision reversing its**
                         **April 26, 1999 order based on new medical**
                         **evidence.** The OWCP found that Plaintiff
                         continued to suffer residuals from the on-
                         the-job injury, and it expanded Plaintiff's
                         accepted conditions to include a
                         consequential mental condition.

### PROCEDURAL HISTORY

On March 16, 2004, Plaintiff filed a complaint based on

Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section

2000e et seq., and Section 501 of the Rehabilitation Act of 1973,

as amended, 29 U.S.C. Section 791 et seq., 42 U.S.C. Section

1981a; and under the laws of the State of Hawaii.

On May 17, 2004, Defendant filed an Answer.

On July 20, 2005, Defendant filed a Motion to Dismiss

Complaint and/or for Summary Judgment.

On September 8, 2005, Plaintiff filed an "Opposition to

Defendants' Motion for Summary Judgment".

On September 22, 2005, Defendant filed "Defendants'

Memorandum in Reply to Plaintiff's Opposition to Defendants'

Motion for Summary Judgment".

### LEGAL STANDARD

**1.  The Standard for a Motion to Dismiss**

A court must dismiss a case for lack of subject matter

jurisdiction under Federal Rule of Civil Procedure 12(b)(1).

Subject matter jurisdiction is fundamental and cannot be waived.

11

The party seeking to invoke the jurisdiction of the court has the burden of establishing that jurisdiction exists. Scott v. Breeland, 792 F.2d 925, 927 (9th Cir. 1986). The court is under a continuing duty to dismiss an action whenever it appears that the court lacks jurisdiction. Billingsley v. C.I.R., 868 F.2d 1081, 1085 (9th Cir. 1989).

A court may dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Moore v. City of Costa Mesa, 886 F.2d 260, 262 (9th Cir. 1989), cert. denied, 496 U.S. 906 (1990). Regarding a motion to dismiss, courts must "accept the plaintiffs' allegations as true and construe them in the light most favorable to plaintiffs." In re Daou Systems, Inc. Securities Litigation, 411 F.3d 1006, 1013 (9th Cir. 2005), cert. denied __ U.S. __, 126 S. Ct. 1335 (2006)(citations omitted). Still, "[c]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." In re VeriFone Securities Litigation, 11 F.3d 865, 868 (9th Cir. 1993) (citations omitted). See also Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir.), cert denied, 454 U.S. 1031 (1981) (court does not "necessarily assume the truth of legal conclusions merely because they are cast in the form of factual

12

allegations."). A complaint may be dismissed as a matter of law for either of two reasons: (1) lack of a cognizable theory; or (2) insufficient facts under a cognizable legal theory. See Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1988).

2.    The Standard for a Motion for Summary Judgment

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). There must be sufficient evidence that a reasonable jury could return a verdict for the nonmoving party. Nidds v. Schindler Elevator Corp., 113 F.3d 912, 916 (9th Cir. 1996).

The moving party has the initial burden of "identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party, however, has no burden to negate or disprove matters on which the opponent will have the burden of proof at trial. The moving party need not produce any evidence at all on matters for which it does not have the burden of proof. Celotex, 477 U.S. at 325. The moving party must show, however, that there is no genuine issue of material fact and that he or she is entitled to judgment as a matter of

13

law.   That burden is met simply by pointing out to the district
court that there is an absence of evidence to support the
nonmovant's case.   Id.

If the moving party meets its burden, then the opposing
party may not defeat a motion for summary judgment in the absence
of probative evidence tending to support its legal theory.
Commodity Futures Trading Comm'n v. Savage, 611 F.2d 270, 282
(9th Cir. 1979).   The opposing party must present admissible
evidence showing that there is a genuine issue for trial.   Fed.
R. Civ. P. 56(e); Brinson v. Linda Rose Joint Venture, 53 F.3d
1044, 1049 (9th Cir. 1995).   "If the evidence is merely
colorable, or is not significantly probative, summary judgment
may be granted."   Nidds, 113 F.3d at 916 (quoting Anderson v.
Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986)).

The court views the facts in the light most favorable to the
non-moving party.   State Farm Fire & Casualty Co. v. Martin, 872
F.2d 319, 320 (9th Cir. 1989).

Opposition evidence may consist of declarations, admissions,
evidence obtained through discovery, and matters judicially
noticed.   Fed. R. Civ. P. 56(c); Celotex, 477 U.S. at 324.   The
opposing party cannot, however, stand on its pleadings or simply
assert that it will be able to discredit the movant's evidence at
trial.   Fed. R. Civ. P.   56(e); T.W. Elec. Serv., 809 F.2d at
630.   The opposing party cannot rest on mere allegations or

14

denials.  Fed. R. Civ. P. 56(e); Gasaway v. Northwestern Mut.
Life Ins. Co., 26 F.3d 957, 959-60 (9th Cir. 1994).  Nor can the
opposing party rest on conclusory statements.  National Steel
Corp. v. Golden Eagle Ins. Co., 121 F.3d 496, 502 (9th Cir.
1997).

## ANALYSIS

Plaintiff Patricia O'Connell's ("Plaintiff") damages,
according to the Complaint, arise out of discrimination that
allegedly occurred after an on-the-job injury.  Plaintiff filed
suit against John E. Potter, Postmaster General, United States
Postal Service, and the United States Postal Service.  Plaintiff
is not seeking to impose personal liability on the Postmaster
General, rather she is seeking damages against the Defendant in
his official capacity.  In Kentucky v. Graham, 473 U.S. 159
(1985), the Supreme Court discussed the distinction between suits
against a person in an individual, as opposed to official,
capacity.  The Court explained that while individual-capacity
actions seek to impose personal liability upon a government
official, payable out of personal assets, an official-capacity
action is, "in all respects other than name, to be treated as a
suit against the entity."  Id. at 166.  This suit is, therefore,
a suit against a single defendant, the United States Postal
Service.

Plaintiff did suffer damages as a result of her injury
occurring on June 26, 1997.  As these damages have been

15

adjudicated pursuant to the Federal Employment Compensation Act, 5 U.S.C. §§ 8101 et seq., the Court lacks subject matter jurisdiction for the claims arising from her injury and GRANTS Defendant's Motion to Dismiss.

Plaintiff also alleges damages resulting from intentional race, sex and disability discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., 42 U.S.C. § 1981, and section 501 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 791 et seq. Plaintiff's claim is that these damages were not covered by the Federal Employment Compensation Act award. Plaintiff has failed to allege sufficient facts to set out a prima facie claim of sex, race and disability discrimination. The Court GRANTS the Defendant's Motion for Summary Judgment as to the discrimination and retaliation claims.

I.    **Motion To Dismiss**

    A.    **Plaintiff Did Suffer Damages As a Result of Plaintiff's Injury Occurring on June 26, 1997. The Claim Is Preempted by the Federal Employees Compensation Act, and the Motion to Dismiss is GRANTED for Lack of Subject Matter Jurisdiction**

The damages claimed by the Plaintiff are the result of the accident of June 26, 1997. The Court must grant the motion to dismiss because the Court lacks subject matter jurisdiction, as the claim is preempted by the Federal Employment Compensation Act ("FECA"). FECA establishes a comprehensive and exclusive

16

workers' compensation scheme for federal employees that is administered by the Department of Labor, Office of Workers' Compensation Programs ("OWCP"). 5 U.S.C. § 8102(a). Once it is determined that an injury is within the scope of coverage of FECA, its remedy is exclusive and an employee cannot bring any other claims for compensation against the government. See 5 U.S.C. § 8116(c).

The Secretary of Labor is vested with the power to "administer, and decide all questions arising under" FECA and the Secretary's determinations are final and not subject to review by the courts. See 5 U.S.C. §§ 8145 and 8128(b)(1) and (2). The statutory test for coverage is whether the employee was injured "while in the performance of his duty." 5 U.S.C. § 8102(a).

As the damages are the result of the plaintiff's injury occurring on June 26, 1997, Plaintiff's claim is preempted by FECA. Plaintiff puts forth that the claim is not preempted by FECA, as this action involves intentional discrimination, which is separate and distinct from a workers' compensation claim. This claim is unsuccessful, as this Court finds that Plaintiff has failed to allege sufficient facts to prove the essential elements of the disability discrimination claim and has failed to state a claim upon which relief can be granted in her race and sex discrimination claims.

Plaintiff cites two cases in support of this claim. The first case, Nichols v. Frank, 42 F.3d 503 (9th Cir. 1994)

involves a deaf and mute postal employee who brought a Title VII
sexual harassment action based on alleged harassment by her
supervisor.  The <u>Nichols</u> Court distinguished between the two
types of harm suffered by the plaintiff, finding that the post-
traumatic stress disorder claim is barred by FECA's exclusivity
provision, as it is a disease proximately caused by employment.
The court then found that the harm the plaintiff suffered from
any sexual discrimination is not an injury within the meaning of
FECA, as such harm is not an injury by accident and is not
proximately caused by employment.  The court held that "FECA's
exclusivity provisions prevent a court from awarding Nichols
additional payments for her work-related 'injury' within the
meaning of the act (i.e., her post-traumatic stress
disorder)...." <u>Id</u>. at 515.

        Plaintiff's case is comparable to the <u>Nichols</u> case in that
Plaintiff's damages are proximately caused by employment.
Plaintiff's damages are the result of the on-the-job injury
received June 26, 1997, and are therefore barred by FECA's
exclusivity provision.  The <u>Nichols</u> case is distinguishable, as
there has been no statement of a prima facie claim of intentional
discrimination.

        Plaintiff next cites <u>McLean v. Runyon</u>, 222 F.3d 1150 (9th
Cir. 2000), which is not applicable here.  The <u>McLean</u> court did
not address the issue of FECA preemption divesting a court of
subject matter jurisdiction.  On the distinguishable facts, the

McLean court held that a jury was entitled to find that a certain vacant position was at "the same grade or level" as the former employee's position, such that the defendant was required to reassign the plaintiff to the vacant position as a reasonable accommodation.  In McLean, the District Court acted within its discretion in offsetting the former employee's damages award by the amount of his FECA workers' compensation benefits.

Defendant cites the United States Supreme Court's holding in Lockheed Aircraft Corp. v. United States, 460 U.S. 190 (1983), which stated:

> [The FECA exclusivity provision] was designed to protect the Government from suits under statutes, such as the Federal Tort Claims Act, that had been enacted to waive the Government's sovereign immunity.  In enacting this provision, Congress adopted the principal compromise --"the quid pro quo" -- commonly found in workers' compensation legislation: employees are guaranteed the right to receive immediate, fixed benefits, regardless of fault and without need for litigation, but in return they lose the right to sue the Government.

460 U.S. at 193-194 (Def.'s Mem. Supp. Dismiss Complaint and/or Summ. J. at 14.)

Defendant also cites the Eighth Circuit Court of Appeals' holding, which declared:

> [A] frustrated FECA claimant cannot secure judicial review of a FECA compensation decision by claiming that the Rehabilitation Act entitles her to accommodation in performing an alternative position approved by the Department of Labor when the claim is predicated upon the same illness or injury that gave rise to the Department of Labor's initial decision.

Meester v. Runyon, 149 F.3d 855, 857 (8th Cir. 1998).

19

Plaintiff is barred from bringing suit for her injuries arising out of the June 26, 1997 accident by FECA.  On October 8, 2003 the Office of Workers' Compensation Programs reopened Plaintiff's case and vacated the April 26, 1999 order terminating Plaintiff's benefits.  The Office of Workers' Compensation Programs expanded the accepted conditions to include a consequential mental condition (chronic pain syndrome and major depression).  Plaintiff was issued compensation for total wage loss for the entire period that she was incapacitated for work. She received benefits from the Office of Personnel Management ("OPM") for the period of time that included the period up to the time when the Office of Workers' Compensation Programs reversed its denial, at which point she was given the option of electing between Office of Personnel Management and Office of Workers' Compensation Programs benefits.  Plaintiff currently is on the Office of Workers' Compensation Programs' periodic roll, receiving $2,534.00 every four weeks, or $32,942.00 annually, tax-free.  Medical treatment is also covered for her accepted conditions at no cost to her.  (Ueno Decl. at ¶¶ 15-16).

It is clear that Plaintiff has been issued compensation by the Office of Workers' Compensation Programs for the on-the-job accident of June 26, 1997.  It is also clear that this compensation includes Plaintiff's chronic pain syndrome and major depression.  The October 8, 2003 Order from the Office of Workers' Compensation Programs compensated Plaintiff for total

wage loss for the entire period that she was incapacitated for
work and expanded the accepted conditions to include a
consequential mental condition. This includes chronic pain
syndrome and major depression. All of the physical and mental
injuries of Plaintiff have therefore been addressed by FECA and
benefits have been awarded. As all injuries are compensated for
under FECA, and Plaintiff has been properly awarded compensation,
the Court has no subject matter jurisdiction and must GRANT the
Motion to Dismiss for this claim.

## II.  Motion for Summary Judgment

### A.  Plaintiff's Disability Discrimination Claim

Plaintiff brings claims of disability discrimination under
section 501 of the Rehabilitation Act of 1973, 29 U.S.C. § 791 et
seq. Plaintiff has failed to allege sufficient facts to support
the essential elements of her disability discrimination claim.
The Court, as a result, GRANTS the Defendant's Motion for Summary
Judgment on the claim of disability discrimination under the
Rehabilitation Act.

The Ninth Circuit Court of Appeals has held that in order to
establish a prima facie case of disability discrimination under
the Rehabilitation Act, Plaintiff must demonstrate that (1) she
is a person with a disability, (2) who is otherwise qualified for
employment, and (3) suffered discrimination because of her
disability.  See Lucero v. Hart, 915 F.2d 1367, 1371 (9th Cir.
1990); Reynolds v. Brock, 815 F.2d 571, 573-74 (9th Cir. 1987).

Once a plaintiff has made out a prima facie case, the burden then
shifts to the defendant to offer a legitimate, nondiscriminatory
reason for its adverse employment action.  When a defendant
articulates such a reason, the plaintiff must then offer evidence
to show that the defendant's proffered reason is a pretext for
discrimination or retaliation for protected activity.  See Ray v.
Henderson, 217 F.3d 1234, 1240 (9th Cir. 2000); Godwin v. Hunt
Wesson, Inc., 150 F.3d 1217, 1220 (9th Cir. 1998).  In
determining whether a federal agency has violated the
Rehabilitation Act, the standards under Title I of the Americans
with Disabilities Act ("ADA") apply.  See 29 U.S.C. § 794(d).

## 1.  Plaintiff As a Qualified Individual

Plaintiff is not a qualified individual under the
Rehabilitation Act.  The ADA defines a "qualified individual" as
"an individual with a disability who, with or without reasonable
accommodation, can perform the essential functions of the
employment position that such individual holds or desires."  42
U.S.C. § 12111(8).

Plaintiff must prove that she could perform essential job
functions of a mail carrier at the time of the adverse employment
action.  Defendant cites Weyer v. Twentieth Century Fox Film
Corp., 198 F.3d 1104, 1112 (9th Cir. 2000), holding that the
employee must be able to perform essential job functions at the
time of termination.  The evidence before the Court shows
Plaintiff could not perform the essential functions of a mail

carrier, with or without accommodation. (Plaintiff's Concise
Counter-Statement at ¶¶ 8-9).

On or about July 27, 1998, Plaintiff presented a medical
certificate from her then treating physician, Dr. Elva G.
Pearson, dated July 27, 1998, that stated Plaintiff was totally
incapacitated for work effective that date. (Ueno Decl. at ¶ 6).
Plaintiff received compensation for total wage loss from July 29,
1998, until April 26, 1999, the date the Office of Workers'
Compensation Programs terminated all benefits due to a finding
that she no longer suffered residuals from the accident. (Id. at
¶¶ 6-7.) Plaintiff appealed and was given limited duty status
for the duration of the appeal process. (Id. at ¶¶ 8-10.) Once
the order terminating benefits was affirmed on July 24, 2000,
Plaintiff lost limited duty status. (Id. at ¶¶ 11-12.) On or
about September 29, 2000, Plaintiff submitted a letter from her
treating physician, Dr. Alan Buffenstein, in which he certified
that Plaintiff was "suffering from physical pain, stress &
depression & is currently unable to work." (Id. at ¶ 13). Dr.
Buffenstein periodically provided medical certifications
indicating that Plaintiff was totally incapacitated from
performing her usual duties. (Id.) Plaintiff has never returned
to work, and on November 12, 2002, Plaintiff took Office of
Personnel Management disability retirement. (Id. at ¶¶ 13-14,
and Plaintiff's Concise Counter-Statement at ¶ 14).

Plaintiff argues that Defendant is unable to demonstrate

23

that accommodating Plaintiff would present an undue hardship.

(Pl.'s Opp. Def.'s Motion Summ. J. at 7).   This argument,

however, is contradicted by Plaintiff's own assertion that she

was totally incapacitated and unable to return to work.   On or

about September 29, 2000, Dr. Buffenstein submitted a lettergram

in which he certified that she was "suffering from physical pain,

stress & depression & is currently unable to work."   (Ueno Decl.

at ¶ 13).

       The Ninth Circuit Court of Appeals held that because the

plaintiff

       was totally disabled, we need not consider her
       contention that Applause could have accommodated her
       disability by allowing her the flexibility to work when
       she was able, as long as she fulfilled her monthly
       quota.   Because she was totally disabled, there was no
       genuine issue that she could have performed her job
       with the proposed, or any other, accommodation.

Kennedy v. Applause, Inc., 90 F.3d 1477, 1482 (9th Cir. 1996).

As Plaintiff admits to being totally disabled, she cannot be

entitled to reasonable accommodation and cannot be a "qualified

individual" entitled to sue.

       **2.   Even If Plaintiff Was a Qualified Individual, Plaintiff
            Failed to Put Forth Evidence That Defendant Refused to
            Reasonably Accommodate Her**

       Reassignment to a vacant position can be a form of

reasonable accommodation.   42 U.S.C. § 12111(9)(B).   The

applicant for a vacant position "must be qualified for, and be

able to perform the essential functions of, the position sought

24

with or without reasonable accommodation." 29 C.F.R. Pt. 1630,
App. at § 1630.2(o). Further, the employer and employee are
obligated to engage in an informal interactive process that
"should identify the precise limitations resulting from the
disability and potential reasonable accommodations that would
overcome those limitations." 29 C.F.R. § 1630.2(o)(3).

"[T]he failure to engage in the interactive process by
itself does not give rise to relief." Ozlowski v. Henderson, 237
F.3d 837, 840 (7th Cir. 2001), citing Rehling v. City of Chicago,
207 F.3d 1009, 1015-1016 (7th Cir. 2000). The Ozlowski Court
required a showing that a vacant, suitable position was available
before it would consider "whether the failure to provide that
accommodation was due to a breakdown in the interactive process."
Ozlowski, 237 F.3d at 840. "It is the plaintiff's burden to show
that a vacant position exists for which he was qualified." Id.
In order to be qualified, plaintiff has to "(1) satisfy the
legitimate prerequisites for that alternative position, and (2)
be able to perform the essential functions of that position with
or without reasonable accommodations." Dalton v. Subaru-Isuzu
Automotive, Inc., 141 F.3d 667, 678 (7th Cir. 1998).

In affirming summary judgment in favor of the United States
Postal Service, the Ozlowski Court noted that plaintiff did not
produce any evidence that suitable positions were vacant or that
he was qualified to perform them, other than his own conclusory
statements. Ozlowski, 237 F.3d at 840. "[A]n adverse party may

not rest upon the mere allegations or denials of the adverse
party's pleading, but the adverse party's response, by affidavits
or as otherwise provided in this rule, must set forth specific
facts showing that there is a genuine issue for trial.  If the
adverse party does not so respond, summary judgment, if
appropriate, shall be entered against the adverse party." Fed. R.
Civ. P. 56(e).

　　　　Plaintiff argues that she "could have worked in personnel,
finance, and forwarding mail.  All of the foregoing positions
were available at the main post office located at the airport."
(Plaintiff's Decl. at ¶ 5).  Plaintiff does not offer any
evidence that such positions actually existed and were available.

　　　　Plaintiff did not submit, by affidavit or otherwise, facts
that prove the existence of any available vacant, funded
positions that Plaintiff could have performed, with or without
reasonable accommodation.  Plaintiff merely relies on conclusory
allegations that lack evidentiary support.  Accordingly,
Plaintiff cannot prove that Defendant failed to reasonably
accommodate her.

　　　　Defendant puts forth evidence of the available funded
positions that were vacant on the island of Oahu during Fiscal
Years 2000 and 2001.  (Def.'s Ex. 1 and 2, USPS NOA New Hire
Transactions for Fiscal Years 2000 and 2001.)  The evidence
illustrates that the available funded positions included city
carrier, laborer/custodial, markup clerk-automated, motor vehicle

operator, and sales, service and distribution associate.  (See
Def.'s Ex. 1 and 2; Second Declaration of Frank Santos dated
9/21/05 "Second Santos Decl." at ¶ 4.)  Frank Santos, the
Postmaster for the Honolulu Post Office, United States Postal
Service, stated that, in light of Plaintiff's medical
limitations, she would not have been able to meet the requisite
physical demands of any of the jobs that were available at the
time of Plaintiff's complaint, with or without a reasonable
accommodation.  (Second Santos Decl. at ¶ 13(a), ¶ 13(b), ¶
13(c), ¶ 13(d), ¶ 13(e).)

        Plaintiff did not offer any evidence that she was qualified
for, and able to perform the essential functions of, any of the
available positions sought with or without reasonable
accommodation.  Defendant has set forth evidence of the positions
that were available as well as evidence that Plaintiff was not
able to perform the essential functions of these positions with
or without reasonable accommodation.

        As Plaintiff has failed to set forth any evidence of
qualifications for and ability to perform the essential functions
of the positions that were available, with or without reasonable
accommodation, Plaintiff cannot show that she suffered
discrimination because of her disability.  The Court therefore
GRANTS Defendant's motion for summary judgment on Plaintiff's
claim of disability discrimination under section 501 of the
Rehabilitation Act of 1973, 29 U.S.C. §§ 791 et seq.

**B.   Plaintiff's Race and Sex Discrimination Claims**

Plaintiff alleges that she was discriminated against on the bases of race and sex in violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981a.  Plaintiff alleges that she was "tricked" into requesting "light duty" status, which made it possible for Defendant to reduce her hours.  (O'Connell Decl. at ¶ 9.) Plaintiff also alleges that Defendant gave preferential treatment to three male carriers of different races by reducing her hours and not reducing their hours, and that these males were similarly situated and their treatment should have been comparable to Plaintiff.

Plaintiff cannot rely on mere conclusory allegations that are not supported by evidence.  Defendant properly relied on the Office of Workers' Compensation Programs' July 24, 2000 decision that the Plaintiff could no longer be on "limited duty" status, because of the ruling by the Office of Workers' Compensation Programs that Plaintiff's injuries were not job-related injuries. In addition, Plaintiff puts forth no evidence that the reduction in her hours was discriminatory.  Defendant submits evidence that the three males were not similarly situated to Plaintiff.

> **1.   Plaintiff Was Given the Option of Submitting Either a Request for Permanent Light Duty or a Request for Office of Personal Management Disability Retirement Benefits As a Result of the Findings of the Office of Workers' Compensation Programs Representative.**

On June 26, 1997, Plaintiff suffered an on-the-job injury.

28

She filed for workers' compensation and received workers' compensation benefits. (Ueno Decl. at ¶ 3.) "The [United States Postal Service] is obligated to provide suitable work to an employee who files a work-related injury claim and is not capable of performing his or her full duties due to residuals from the job-related injury. Such an employee is deemed to be on 'limited duty' status." (Id. at ¶ 5.) Plaintiff was unable to perform her full duties as a mail carrier due to her on-the-job injury, and was assigned work within her limitations of no prolonged standing, walking, lifting, bending, or twisting. (Id. at ¶ 6.) Plaintiff had difficulties performing these assignments, and on or about July 27, 1998, she presented a medical certificate from her then treating physician, Dr. Elva G. Pearson, that stated she was totally incapacitated for work effective that date. (Id.) Plaintiff then filed a claim for compensation and the Office of Workers' Compensation Programs compensated her for total wage loss from July 29, 1998, until April 26, 1999. (Id.)

On April 26, 1999, the Office of Workers' Compensation Programs issued an order terminating all of the Plaintiff's compensation benefits, finding that Plaintiff had recovered from the injuries and no longer suffered residuals of her on-the-job injury. (Id. at ¶ 7.) On July 24, 2000, the Office of Workers' Compensation Programs hearing representative issued a decision affirming the April 26, 1999 termination order. Plaintiff disagreed and requested an oral hearing on the merits, which was

29

subsequently held before an Office of Workers' Compensation
Programs hearing representative on April 25, 2000.  (Id. at ¶ 8.)

At the time the Office of Workers' Compensation Programs
representative found that Plaintiff no longer suffered residuals
from the on-the-job accident, Plaintiff was no longer allowed to
continue on "limited duty" status.  The United States Postal
Service then informed Plaintiff of her right to request "light
duty" status.  (Id. at ¶ 9.)  Article 13 of the union agreement
addresses "light duty," which can be requested by an employee who
is not capable of performing full duty due to a non-job related
condition.  (Id.)  Plaintiff had strong reservations against
signing and submitting a "light duty" status request because the
form referred to an off-the-job condition.  (Id.)  The USPS
decided to continue to treat Plaintiff as if she was still in
"limited duty" status pending the outcome of her FECA appeal.
(Id. at ¶ 10.)

By a decision dated July 24, 2000, the Office of Workers'
Compensation Programs hearing representative affirmed the April
26, 1999 order terminating Plaintiff's FECA benefits, finding
that Plaintiff no longer suffered residuals of her on-the-job
injury.  (Id. at ¶¶ 11-12.)  As limited duty status was provided
only to those employees who suffered from job-related injuries,
Plaintiff lost her limited duty status.  (Id. at ¶ 12.)

Relying on the Office of Workers' Compensation Programs
decision, in early August of 2000, Plaintiff's supervisor, Coleen

30

K. Larsen, wrote to inform Plaintiff that she had the option of submitting either a request for permanent "light duty" status under Article 13 of the National Agreement or a request for disability retirement benefits from the Office of Personnel Management. (Larsen Decl. at ¶ 5.) Plaintiff requested permanent "light duty" status and submitted work restrictions from her doctors. (Id. at ¶ 6.)

It is clear that Plaintiff was not "tricked" into accepting permanent "light duty" status. It is also clear that Plaintiff's supervisors were not discriminating against her when Plaintiff was given the choice of permanent "light duty" status or disability retirement benefits. Plaintiff's supervisors were clearly following the correct procedure as required by the Office of Workers' Compensation Programs. Given the options available based on the on the decision of Office of Workers' Compensation Programs at that time, Plaintiff did take "light duty" status. Plaintiff's supervisor acted in conformity with the procedural posture of the proceeding at that time.

   2.   **The Three Male Carriers Were Not Similarly Situated**

Plaintiff also alleges that while she was on permanent "light duty" status, she was discriminated against when her work hours were reduced, but the hours of three similarly situated male employees of different races did not have their hours reduced. This claim also lacks merit. Plaintiff offers no evidence that the three male employees were similarly situated.

31

Defendant sets forth evidence proving the three male employees
were not similarly situated and could not be compared to
Plaintiff.

Defendant cites testimony from Coleen K. Larsen, who from
May 2000 to April 2001 was the Supervisor, Customer Service-
Carriers at the Kapalama Post Office, to prove that the three
male carriers were not comparable to Plaintiff.  Larsen states
that the three male carriers, Wilfred Wong, Ross Higginbotham and
Chris Ha'ae, were not similarly situated to Plaintiff in all
relevant respects because "(1) at the time Plaintiff's 'light
duty' hours were reduced, the male employees were on 'limited
duty' status and Plaintiff was not; (2) each of the three male
employees had less physical restrictions than Plaintiff, could
work longer hours, and could do more physically demanding work;
and (3) each of the three mail employees could 'case' mail for
their assigned routes or for other carriers' routes." (Def.'s
Mem. Reply to Pl.'s Opp. to Def.'s Motion for Dismissal and/or
Summ. J. at 13, referencing the Larsen Decl. at ¶ 7).

"Limited duty" status is given to an employee who is not
capable of performing full duty due to an on-the-job injury.
Article 13 of the union agreement addresses "light duty" status,
which can be requested by an employee who is not capable of
performing full duty due to a non-job related condition.

Plaintiff has presented no credible evidence of disparate
treatment, as the three male employees and Plaintiff were not

32

similarly situated.  The Manager of the Injury Compensation Department for the Honolulu District of the USPS testified in his sworn declaration that the USPS was required to compensate these three "limited duty" employees for the balance of the scheduled work day that each employee was not able to complete because of his disability or because the USPS failed to provide suitable work.  (Ueno Decl. at ¶ 5).  The decision by Plaintiff's supervisor to give the three "limited duty" employees priority for work assignments, and to give them as much suitable work as they were able to perform within their medical limitations, was legitimate and non-discriminatory.  (Larsen Decl. ¶¶ 7-8).  Plaintiff has not put forth any factual allegations or evidence to support a claim of sex- or race-based discrimination, and therefore has not established a prima facie case of discrimination.

Defendant, through the introduction of admissible evidence, has put forth a legitimate, non-discriminatory reason for the alleged adverse action in order to rebut the inference of discrimination.  Plaintiff's hours were reduced because: (1) Office of Workers' Compensation Programs' finding that Plaintiff no longer suffered from a work-related condition terminated her "limited duty" status; and (2) because the USPS had to provide suitable work for three "limited duty" employees at the Kapalama Post Office, there was little or no productive work available that the Plaintiff could perform within her restrictions.

Plaintiff has not established that the Defendant's legitimate, non-discriminatory reason was a pretext to mask unlawful discrimination.  Plaintiff merely relies on her declaration that she was discriminated against because the three male employees were allowed to maintain their hours on a limited duty status.  Such conclusory and self-serving statements, without support or corroboration, are insufficient to create a genuine issue of material fact and cannot overcome a well-pled summary judgment motion.  See Ozlowski, 237 F.3d at 840.  In any event, Plaintiff has now received full compensation for the work period in question.  The Court GRANTS Defendant's Motion for Summary Judgment on Plaintiff's claims of race and sex discrimination under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981a.

**C.    Plaintiff's Retaliation Claim.**

   **1.    Plaintiff Failed to Exhaust Her Administrative Remedies.**

Plaintiff failed to exhaust her administrative remedies. Federal employees claiming discrimination in federal court must first exhaust their available administrative remedies.  Brown v. General Services Administration, 425 U.S. 820, 832 (1976); Erickson v. West, 876 F. Supp. 239, 242 (D. Haw. 1995).  "This requirement is jurisdictional; a federal court may not review discrimination complaints without exhaustion of remedies." Erickson, 876 F. Supp. at 242.  "The requirement is also

34

reasonable; exhaustion of remedies allows the employer an opportunity to investigate allegations, create an administrative record, and informally resolve disputes." Id.

Plaintiff filled out the "Informal Complaint of Discrimination" form. (See Def.'s Ex. "E", Informal Complaint of Discrimination form.)  When Plaintiff filled out the "Informal Complaint of Discrimination" form she did not indicate any claim for retaliation.  (Id.)

Plaintiff later filed a formal complaint by filing the "EEO Complaint of Discrimination in the Postal Service" form on December 19, 2000. (See Def.'s Ex. "F", EEO Complaint of Discrimination in the Postal Service form.)  Plaintiff, by putting an "X" in the appropriate boxes, indicated that she was alleging discrimination of race, color, sex, mental disability and physical disability.  Plaintiff did not indicate a claim of discrimination based on retaliation in her formal complaint.  She did not put any marks next to the "Reprisal" box.  (Id.)

Plaintiff does not dispute Defendant's allegation that she failed to assert her retaliation claim in the administrative EEO proceedings.  (Plaintiff's Concise Counter-Statement at ¶ 15). Plaintiff, in her Opposition to Defendants' Motion for Summary Judgment, cites Brown v. Puget Sound Elec. App. & Train. Trust, 732 F.2d 726, 729 (9th Cir. 1984), cert. denied, 469 U.S. 1108 (1985), for the proposition that "[w]hen an employee brings suit for incidents not listed in his prior EEOC charge, a federal

35

court may hear the new Title VII claims if they are 'like or reasonably related to the allegations of the EEOC charge.'" (Plaintiff's Opposition at 3).

Plaintiff makes no credible argument as to how the claims are alike.  The retaliation claim is not "like or reasonably related to" Plaintiff's disparate treatment claim.  Even if Plaintiff had exhausted the administrative remedy available by indicating a claim for retaliation, she would still not prevail. Plaintiff has failed to established a prima facie case for retaliation.

### 2.   Plaintiff Cannot Establish a Prima Facie Case for Retaliation.

Plaintiff fails to establish a prima facie case for retaliation.  Plaintiff, in the Complaint, alleges that Coleen K. Larsen's treatment of Plaintiff on September 19, 2000, was retaliatory and in violation of 42 U.S.C. § 2000e et seq. (Complaint at ¶ 13.)  On September 18, 2000, Plaintiff's hours were reduced due to her "light duty status."  Plaintiff alleges that on September 19, 2000, she told Larsen, her supervisor, that what Larsen was doing to her was depressing and stressing her even more.  (Id.)  Plaintiff alleges that Larsen "got mad at" Plaintiff for wanting to put in a stress claim form on September 19, 2000, and threatened to not schedule Plaintiff at all.  (Id.) Plaintiff claims that this alleged threat was retaliation for Plaintiff's complaints about the work hour reduction.  (Pl.'s

36

Opp. Def.'s Motion Summ. J. at 4.)

To establish a prima facie case of retaliation, an aggrieved employee must show "that (1) he has engaged in statutorily protected expression; (2) he has suffered an adverse employment action; and (3) there is a causal link between the protected expression and the adverse action."  E.E.O.C. v. Crown Zellerbach Corp., 720 F.2d 1008, 1012 (9th Cir. 1983)(footnote omitted).

An internal complaint to company management is protected behavior.  See Kotcher v. Rosa and Sullivan Appliance Ctr., Inc., 957 F.2d 59, 65 (2nd Cir. 1992).  Without an adverse employment action, however, there is no retaliation claim.

### a.   Plaintiff Cannot Prove That She Suffered An Adverse Employment Action.

Plaintiff must also have suffered an adverse employment action, which did not occur here.  The Ninth Circuit Court of Appeals has found that a "wide array of disadvantageous changes in the workplace constitute adverse employment actions."  Ray, 217 F.3d at 1240.  The Ray Court determined the standard for finding an adverse employment action, holding that "an action is cognizable as an adverse employment action if it is reasonably likely to deter employees from engaging in protected activity."  Id. at 1243 (footnote omitted).[1]

---

[1]The Ninth Circuit Court of Appeals has found adverse employment actions to take many forms.  Adverse employment action can include denial of transfer, see Manatt v. Bank of America, NA, 339 F.3d 792, 802 (9th Cir. 2003); a cut in monthly base salary, see Little v. Windermere Relocation, Inc., 301 F.3d 958,

The threat allegedly made by Plaintiff's supervisor to not
schedule Plaintiff at all does not amount to retaliation.  The
Ninth Circuit Court of Appeals held in <u>Coszalter v. City of
Salem</u>, 320 F.3d 968, 975 (9th Cir. 2003) that, "[i]n some cases,
the would-be retaliation action is so insignificant that it does
not deter the exercise of First Amendment rights, and thus does
not constitute an adverse employment action within the meaning of
the First Amendment retaliation cases."  The <u>Coszalter</u> Court
discussed the <u>Nunez</u> case, holding that "[t]he essential holding
of <u>Nunez</u> is simply that when an employer's response includes only
minor acts, such as 'bad-mouthing,' that cannot be reasonably
expected to deter protected speech...."  <u>Id.</u> at 976.

Plaintiff alleges that her supervisor threatened to not
schedule her at all.  This alleged threat never came to fruition.

---

970 (9th Cir. 2002); low rating in job performance review,
decreased job responsibilities, and failure to receive promotions
<u>see</u> <u>Passantino v. Johnson & Johnson Consumer Products, Inc.</u>, 212
F.3d 493, 500-01, 506 (9th Cir. 2000); a negative job reference,
<u>see</u> <u>Hashimoto v. Dalton</u>, 118 F.3d 671, 674 (9th Cir. 1997); a
layoff, <u>See</u> <u>Miller v. Fairchild Ind., Inc.</u>, 885 F.2d 498, 503
(9th Cir. 1989); and four-month disciplinary suspension, <u>see</u>
<u>Crown Zellerbach Corp.</u>, 720 F.2d at 1012.

    Other conduct, however, may not constitute adverse
employment action.  The Ninth Circuit Court of Appeals has found
that many actions, such as "mediocre" performance evaluation not
made available to other potential employers and unaccompanied by
any meaningful change in work assignments, <u>see</u> <u>Lyons v. England</u>,
307 F.3d 1092, 1118 (9th Cir. 2002); ostracism by co-workers,
<u>see</u> <u>McAlindin v. City of San Diego</u>, 192 F.3d 1226, 1238-39 (9th
Cir. 1999); transferring employee where salary was unaffected,
<u>see</u> <u>Nidds</u>, 113 F.3d at 919; and "badmouthing" an employee, <u>see</u>
<u>Nunez v. City of Los Angeles</u>, 147 F.3d 867, 875 (9th Cir. 1998);
may not constitute adverse employment actions.

On September 19, 2000, Plaintiff confronted her supervisor about the reduction of hours. Plaintiff "began to scream and cry to such an extent that the police were called and Plaintiff was taken to the emergency room by ambulance." (Larsen Decl. ¶ 11.) On September 29, 2000, Plaintiff submitted a letter from her doctor stating that she was unable to work. Plaintiff did not return to work after this date.

### b. Plaintiff Cannot Show a Causal Link Between Protected Expression and Any Adverse Action.

If Plaintiff is attempting to allege that the reduction in her hours prior to her protected speech was the adverse action, Plaintiff would not be able to show a causal connection. The protected expression happened after the alleged adverse action. In Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1064-65 (9th Cir. 2002), the Ninth Circuit Court of Appeals held that in order to establish the element of causation in a Title VII retaliation claim, the plaintiff must show "by a preponderance of the evidence that engaging in the protected activity was one of the reasons for [the adverse employment action] and that but for such activity," the adverse employment action would not have occurred.

"That an employer's actions were caused by an employee's engagement in protected activities may be inferred from 'proximity in time between the protected action and the allegedly retaliatory employment decision.'" Ray, 217 F.3d at 1244 citing

39

Yartzoff v. Thomas, 809 F.2d 1371, 1376 (9th Cir. 1987).  Such an inference is not possible in this case because the alleged retaliation occurred when her hours were reduced on September 18, 2000, but the alleged engagement in a protected activity was Plaintiff's informal complaint to her supervisor on September 19, 2000, one day later.  Plaintiff's hours were reduced, for a non-discriminatory reason, before Plaintiff engaged in the allegedly protected activity.  Plaintiff cannot establish a prima facie case for retaliation and cannot refute the Defendant's legitimate explanations for its actions.  For all of the reasons stated, the Court GRANTS summary judgment on Plaintiff's claims of retaliation under 42 U.S.C. § 2000e et seq.

## CONCLUSION

In accordance with the foregoing, the Court HEREBY ORDERS that:

1.   The injuries claimed by Plaintiff are the result of the June 26, 1997 accident, therefore the claim is preempted by the Federal Employment Compensation Act and the motion to dismiss this claim is GRANTED.

2.   Plaintiff has failed to state a discrimination claim upon which relief can be granted.  The Court GRANTS Defendants' Motion for Summary Judgment for Plaintiff's Disability, Race, and Sex Discrimination claims under section 501 of the Rehabilitation Act of 1973, 29 U.S.C. § 791 et seq., Title VII of the Civil

Rights Act of 1964 and 42 U.S.C. § 1981a.

    3.    Plaintiff failed to exhaust her administrative remedies
and Plaintiff has not established the elements of a prima facie
case of retaliation.  The Court GRANTS summary judgment on
Plaintiff's claim for retaliation under 42 U.S.C. §§ 2000e <u>et</u>
<u>seq.</u>

    IT IS SO ORDERED.

    DATED:    Honolulu, Hawaii, March 28, 2006.



_____
Helen Gillmor
Chief United States District Judge

<u>Patricia O'Connell v. John E. Potter, Postmaster General, United</u>
<u>States Postal Service; United States Postal Service</u>, Civil No.
04—00178 HG-BMK; **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**
**COMPLAINT AND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**